[Civ. No. 31203.   Second Dist., Div. Four.   Jan. 22, 1968.]

VIRGINIA ELIZABETH FRIES, Plaintiff and Appellant,
v. BROADWAY FEDERAL SAVINGS AND LOAN
ASSOCIATION OF LOS ANGELES, Defendant and
Respondent.

McCabe & Houts, and Harold A. McCabe for Plaintiff and
Appellant.

Sheppard, Mullin, Richter & Hampton, Wesley L. Nutten
III and William M. Burke for Defendant and Respondent.

BISHOP, J. pro tem.*—Plaintiff seeks by this action filed
November 23, 1965, to foreclose a deed of trust, have a
receiver appointed and for declaratory relief. The general

*Retired judge of the superior court sitting under assignment by the
Chairman of the Judicial Council.

demurrer to the amended complaint of one of the eleven defendants, that of Broadway Federal Savings and Loan Association of Los Angeles, hereinafter referred to as "defendant Broadway," was sustained. Instead of amending her complaint within 15 days, as permitted, plaintiff filed a "Notice of election not to file amended complaint," addressed to defendant Broadway, and the latter moved for a dismissal of the first amended complaint under authority of subdivision 3 of section 581 Code of Civil Procedure.[1] The motion was granted and an order of dismissal as to defendant Broadway was filed June 14, 1966. This was followed July 18 by plaintiff's appeal from the order.

■ The first cause of action, of the amended complaint, is expressly against the "defendants other than" defendant Broadway, but the second cause of action is as expressly "against all defendants," and, by apt reference, incorporates as a part of its allegations all those contained in the first cause of action. We shall relate the facts alleged in the first two causes of action, therefore, insofar as they are pertinent to the case.

On December 30, 1964, the plaintiff and defendant Oliver entered into an escrow agreement by whose terms defendant Oliver agreed to purchase plaintiff's property, Lots 1 and 2 of the Crosby Tract. The purchase price of $65,000 was to be paid plaintiff by a down payment of $7,000 cash, and the giving of a note for $58,000 secured by a trust deed. As a part of the negotiations that led to the escrow, defendant Oliver, fraudulently, with intent to deceive the plaintiff, represented to her that he (defendant Oliver) would secure a loan of about, but not to exceed $80,000 which would be given priority over the $58,000 trust deed securing the note to plaintiff; that the proceeds of the $80,000 loan would be used exclusively to clear plaintiff's property of the dilapidated buildings upon it and that new buildings would be constructed thereon; the funds received through the loan being paid out in installments as the construction progressed. Plaintiff believed the representations made her, and, to make the $80,000 loan possible, executed a subordination agreement (Exhibit B) prepared by the "defendants."

---

[1]Section 581, Code of Civil Procedure provides: "An action may be dismissed . . . 3. By the court . . . , when, after a demurrer to the complaint has been sustained with leave to amend, the plaintiff fails to amend it within the time allowed by the court, and either party moves for such dismissal."

Paragraph VII of the second cause of action (out of chronological order) alleges: "That the record title to the property showed a loan of $45,000 to Edward F. Norbet with a subordination agreement purportedly signed by plaintiff, which the plaintiff has no recollection of signing, and if plaintiff did sign the same, she signed it without knowledge of its contents and through the false representations of the defendants Arthur Oliver, W. McReynolds and Your Real Estate Investment Co. Said subordination agreement is attached hereto . . ." being Exhibit C.[2]

Thereafter, during the first part of April 1965, the amended complaint alleges, defendant Oliver and his agents, knowing better, falsely represented to plaintiff that no loan had yet been secured upon the property, but that they had made arrangements to secure a loan of $39,000 from defendant Broadway, and if the plaintiff would sign another agreement making it a first lien upon the property, it would be a building and construction loan. So plaintiff signed another subordination agreement, Exhibit "D," which made the trust deed for $39,000 in favor of defendant Broadway, superior to the lien of the prior trust deed securing plaintiff's note for $58,000.

We should not permit our report of these various events, and the charges of fraud, to progress too far without noting that, up to this point, nothing whatever is pinned on defendant Broadway. It has made no fraudulent representations and only appears in the picture as the one from whom defendant Oliver and his agents had arranged the loan of $39,000 and to whom the subordination agreement, Exhibit "C" was given at the request of defendant Oliver, who had obtained the loan of $39,000 from defendant Broadway. If there is a cause of action against defendant Broadway it is still to come.

Defendant Oliver became delinquent in both principal and interest, so the plaintiff declared the $58,000 note in default and brought this action, November 23, 1965. Its first count centers its attention upon establishing plaintiff's right to recover on her note. The theory of the second cause is that the three subordination agreements, that seem to stand between plaintiff's trust deed and those that came later, are but shadows. The two made prior to the $39,000, one in favor of

---

[2]Counsel stipulated, at the time of oral argument before this court, that the two exhibits—"C" and "D" had been inadvertently reversed in the pleading and that we might consider the case as though they had been correctly identified.

defendant Broadway, are attacked on the theories of fraud and/or nonexistence. We are not interested in either of them, for there is no claim that the defendant Broadway was a party to any fraud or actually made no loan. A novel theory is advanced for the elimination of its subordination agreement.

It will be remembered that the plaintiff was persuaded to subrogate her trust deed to that standing behind the $39,000 loan by the fraudulent representations (among others) that the $39,000 ''would be a building and construction loan and would be used only for cleaning and clearing up the property and for new construction; that it would be made through an escrow and the fund paid out by the escrow only as the building progressed so that the entire fund would be used for clearing the property and building the buildings.'' Not only is there no allegation in the pleading before us that defendant Broadway had any part in making these representations, but there is no claim that it knew of them or this avowed purpose for the $39,000. The allegations of paragraph VI of the second cause of action in the amended complaint, therefore, state no fact that serves to eliminate its priority agreement in alleging: ''that instead of said loan being handled as a construction loan, as aforesaid, the defendant Broadway . . . treated it as a loan for the purpose of refinancing and disbursed or caused to be disbursed the entire loan fund to this defendant Oliver and . . . other defendants . . . but said funds were unlawfully appropriated to the use of the defendants.''

Without belabored argument we submit that a lender does nothing ''unlawful'' in delivering the money loaned to the borrower. Absent some definite agreement known to and binding upon the lender, he is under no duty of dispensing the money himself; it is loaned to the borrower. We are not overlooking the use of the word ''negligently'' as well as ''unlawfully.'' This, as we reread plaintiff's pleadings, is its true attack upon defendant Broadway. Plaintiff does not contend that she had informed the defendant in any manner of her understanding of how the money borrowed, not by her but by her grantee, was to be dispensed, but points to the subordination agreement and insists that the document should have sounded an alarm to defendant Broadway; that its failure to pry into the arrangements made between her and the borrower was negligence on its part that has the result of nullifying the subordination agreement she gave the defendant.

Just above her signature on the agreement, in capital letters appears this statement: ''Notice: This subordination agree-

ment contains a provision which allows the person obligated on your real property security instrument to obtain a loan a portion of which may be expended for other purposes than improvement of the land." This, insists the appellant in her brief, "is ambiguous as it does not say what part or portion —1%, 90% or 99%" would be used for improvements and "the bold type which says there is an agreement with reference to the use of the funds obtained from a loan should certainly put an experienced lending institution"—meaning the defendant Broadway—"upon notice that there was some such type of agreement and that consequently it made the loan at its peril. . . ."

No doubt defendant Broadway was familiar with the bold type words; they are required by section 2953.3* of the Civil Code, under some conditions but not when the loans exceed $25,000. (§ 2953.5* Civ. Code.) In any event, we fail to see any obligation on its part, arising from the ambiguity which appellant points out and to which she referred in her amended complaint, that it failed to act upon with the consequence that it should be deprived of the advantages of its subordination agreement. In short, we are no more persuaded than the trial court was that the plaintiff has eliminated the effect of the agreement she executed in order to obtain the loan from defendant Broadway. Her amended complaint states no cause of action against defendant Broadway.

The "order or judgment of nonsuit" from which the plaintiff appealed is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

A petition for rehearing was denied on February 15, 1968, and the following opinion was then rendered:

THE COURT.—In *Miller* v. *Citizens Savings & Loan Assn.* (1967) 248 Cal.App.2d 655 [56 Cal.Rptr. 844], this court held a lending agency liable for permitting the borrowed funds to be diverted to the personal uses of the borrower. But in that case the details of the arrangement between the seller and buyer were of record and known to the lender, and the subordination agreement did not clearly warn the seller of the possibility of a diversion. Neither fact is present here: There is no showing that Broadway knew of the alleged oral agree-

---

*References are not to subdivisions (3) and (5) of section 2953.

ment between plaintiff and the buyer and the subordination agreement expressly put plaintiff on notice that some diversion might take place. If anyone was negligent, it was plaintiff and not Broadway.

The petition for rehearing is denied.

Appellant's petition for a hearing by the Supreme Court was denied on March 20, 1968.