# EUNICE L. ROCKHILL AND THE FLAG HARBOR CORPORATION v. THE UNITED STATES OF AMERICA THROUGH ITS AGENCY THE SMALL BUSINESS ADMINISTRATION

[Misc. No. 13, September Term, 1979.]

*Decided August 13, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Paul D. Bekman,* with whom were *Mark D. Dopkin* and *Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A.* on the brief, for petitioners.

*C. Edward Hitchcock,* with whom were *Russell T. Baker, Jr.,* and *Lynne A. Battaglia* on the brief, for respondent.

RODOWSKY, J., delivered the opinion of the Court.

This matter comes to us from the United States District Court for the District of Maryland under the Maryland Uniform Certification of Questions of Law Act.[1] It arises on a motion to dismiss a complaint. In essence we are asked whether, under Maryland law, a mortgage lender whose loan is for construction or repair purposes and who obtains lien priority by subordination, thereby owes a duty to the subordinating lienor to exercise care that the borrower applies the loan proceeds to the intended purposes of the loan. On the facts alleged, our answer is "no."

---

1. Maryland Code (1974, 1980 Repl. Vol.), §§ 12-601 through 12-609 of the Courts and Judicial Proceedings Article.

Eunice L. Rockhill and The Flag Harbor Corporation (Sellers), who have been designated as appellants, in November 1975 respectively conveyed two adjoining pieces of property in Calvert County to Neal E. Beachem and Mary E. Beachem (Borrowers). Sellers took back deeds of trust to secure payment of the unpaid balances of the purchase prices. The properties conveyed by Sellers included some frontage on the Chesapeake Bay and contained a small marina. In January 1977 the marina suffered extensive damage from ice and the area was subsequently declared a disaster area. Borrowers applied for and were granted a disaster loan from appellee, Small Business Administration (SBA). Sellers subordinated their purchase money deeds of trust to the lien securing the SBA loan by agreements with Borrowers dated November 4, 1977. On November 14, 1977 Borrowers executed deeds of trust upon the properties in favor of SBA to secure repayment of the disaster loan. Appropriate recording was effected. Thereafter Borrowers defaulted on the SBA loan. A petition to foreclose was filed on April 11, 1979. Sellers intervened as defendants in the foreclosure proceedings and counterclaimed for a declaration that their purchase money deeds of trust were entitled to first lien status. When SBA moved to dismiss Sellers' counterclaim for failure to state a claim upon which relief could be granted, Sellers requested certification of that issue to this Court. In an opinion dated November 2, 1979 the United States District Court reviewed the allegations, determined that Maryland law governs [2] and concluded that certification should be granted. The certified question is:

Whether the allegations contained in the counterclaim of [Sellers], as reprinted in the statement of facts set out in the Court's opinion dated November 2, 1979 state a cause of action under Maryland law which, if proven, would entitle

---

2. Since the United States District Court has determined that Maryland law controls, the question contemplates that we consider SBA as if it were a private lender. Thus we do not consider whether any duties are imposed on SBA, relevant to this matter, under the laws of the United States.

them to have the subordination agreement dated November 4, 1977, set aside and the priority of their liens restored?

The allegations set out in the opinion are that in August 1977 Borrowers approached Sellers, indicated that they were in the process of applying for an SBA disaster loan and stated that one of the loan requirements was that Sellers subordinate their liens on the properties to the deeds of trust to be executed for the benefit of SBA. Sellers executed the requested subordination agreements with Borrowers in reliance on the fact that Borrowers would use the loan funds to improve the properties and thereby increase their value. The terms of the loan authorization issued by SBA required Borrowers to use the loan proceeds for repairs and improvements on the properties and obligated SBA to distribute the funds as the work was completed. SBA did not properly inspect the progress of the work being performed, properly administer its loan, or properly disburse funds as the repairs were performed. As a result Borrowers used all the loan funds for their own benefit and not for the benefit of the properties.

The opinion determining to certify the question, in order precisely to delineate the issues, also states:

Rockhill and Flag Harbor have not alleged:

1) that the SBA expressly agreed or represented to [Sellers] that it would disburse the funds only as improvements or repairs were completed;

2) that [Sellers] signed or are a party to the SBA-Beachem loan arrangement;

3) that the SBA signed or is a party to the subordination agreement;

4) that the subordination agreement contains language which conditions its enforceability upon the SBA overseeing the use of the funds or distributing the funds only as the work progressed; or

5) that the subordination agreement contains language which limits [Sellers'] waiver of priority only

to the amount of the loan which was actually used
to repair or improve the property.

The general problem presented here has been addressed in a number of decisions. Typically the subordinating party is the owner of land who sells it, or makes a long term lease of it, to a developer who will require financing. An increase in the value of the property upon completion of the contemplated improvements is anticipated, so that the owner may be offered an attractive purchase price or rental. The owner, in turn, assumes some of the risk of the venture by agreeing to an arrangement under which those who will more substantially finance the development obtain priority over a take-back purchase money mortgage, or obtain a lien on the lessor's reversionary interest.

The term "subordination" is used in at least two general senses in the cases of the type presented here. One aspect refers to the executory promise to subordinate to financing of a described type (hereinafter sometimes called a "subordination clause"). The term is also applied to the declaration or agreement which expressly manifests assent to the priority of a specific lien (hereinafter sometimes called a "subordination agreement"). Some subordination clauses contemplate the execution by the subordinator of a subordination agreement. Others are drafted with the object of effecting subordination without further documentation when a given loan falls within the description of the subordination clause ("automatic subordination").

If the borrower defaults and the seller is faced with both non-payment of his subordinated obligation and loss of his land, the search begins for a legal theory which will result in a reversal of the priorities. Because part of a seller's purpose in subordinating is to facilitate development of the property, the quest for relief has included focusing on whether the proceeds of the loan to which the seller subordinated were in fact utilized to enhance the value of the security. Legal theories which have received at least some judicial recognition and by which priority has been wholly or

partially restored to the subordinating seller (or lessor) include:

1. A subordination agreement by which lender and seller are in privity and under which the lender expressly assumes a duty to supervise use by the borrower of the loan proceeds or to restrict their use to designated purposes;

2. Collusion by the lender with the borrower in a diversion of loan proceeds by the borrower from a purpose to which the borrower is obligated to the seller to apply them;

3. An automatic subordination clause under which the seller expressly conditions his subordination on use of the loan proceeds for a designated, limited purpose or on the performance of specified duties by the lender;

4. A condition or limitation which is implied in an otherwise unqualified subordination agreement, whether or not the lender is in privity with the seller under it, based upon a condition or limitation expressed in the subordination clause between seller and borrower; and

5. A judicial determination that the lender owes the seller a duty to exercise a degree of care (variously expressed) over the use of the loan proceeds based upon the relationship of the parties to the project and upon the expectations of the seller.

Theories 1 and 2 present what are considered to be the requirements for relief under the general rule. Here an express agreement between Sellers and SBA is not alleged. Nor is there any allegation that SBA in effect colluded with the Borrowers.

Similarly, theory 3 is not presented here. SBA does not assert an automatic priority based on compliance with an express condition in a subordination clause in the purchase money deeds of trust to Sellers.

Sellers, however, press decisions which have departed from the general rule. They begin their attack at the level of theory 4 and rely upon *Miller v. Citizens Savings & Loan Ass'n.,* 248 Cal. App. 2d 655, 56 Cal. Rptr. 844 (1967). In that case the $95,000 purchase money deed of trust contained a clause subordinating its lien to one or more deeds of trust

" 'made primarily for the purpose of constructing improvements' " and provided that the proceeds of the preferred loan might be disbursed for a number of types of costs including offsite improvements, onsite improvements, escrow charges, insurance, loan costs and advertising. Construction loans totalling $349,500 were obtained to which the seller, without qualification, agreed with the lender to subordinate. The final loan disbursement of $26,341.30 was not utilized for a purpose described in the subordination clause of the purchase money deed of trust. In the seller's action challenging the priority of the construction deeds of trust, dismissal at the close of the plaintiff's case was reversed. It was held that the seller had presented a *prima facie* case for placing the last $26,341.30 of the construction loan advances behind the purchase money lien. The court reasoned that the unqualified subordination between seller and lender must be read together with the limited subordination clause of the purchase money deed of trust of which the lender had knowledge. These were said to be parts of a single agreement so that the limitations on use set forth in the latter were read into the former.

*Miller* was followed and extended in *Middlebrook-Anderson Co. v. Southwest Savings & Loan Ass'n.*, 18 Cal. App. 3d 1023, 96 Cal. Rptr. 338 (1971), which is also pressed by Sellers here. In *Middlebrook* the seller entered into a contract to sell 28 lots to the borrower under an escrow arrangement. The escrow instructions specified a sale price of $365,000 of which $169,500 was deferred and to be secured by a purchase money deed of trust. "This deed was to be second and junior to a construction loan to be obtained at some later time by the buyers." *Id.* at 1026, 96 Cal. Rptr. at 339. During the pendency of the escrow the buyer-borrower advised the seller that the construction lender required its deed of trust to be recorded first. This was done. The construction lender disbursed $1,464,400 of which $300,000 was used for purposes other than construction. When the construction lender threatened foreclosure, the seller filed a complaint which included an allegation that the

lender had "knowledge that the seller would subordinate its lien *on condition* the loan funds were to be used *only* for construction improvements." *Id.* at 1029, 96 Cal. Rptr. at 341 (Emphasis added). Dismissal on demurrer was reversed. The court's analysis was in terms of contract law.

> [T]he lender's claim to priority flows from the agreement between the seller and the buyer. It is only as a result of the seller's waiver of his statutory right to a first lien that the lender achieves priority. Thus, the lender is a third party beneficiary in the seller-buyer agreement, but only to the extent that it abides by the conditions of subordination. If the lender does not comply with the seller's conditions it does not achieve priority. Since one condition to priority is the proper use of the construction funds, the priority of the construction loan lien does not vest until such time as the funds are applied to the construction purpose. [*Id.* at 1033, 96 Cal. Rptr. at 344.]

The court then took a step beyond *Miller* and equated the priority effected by the order of recording with priority accomplished by a subordination agreement.

As we read both *Miller* and *Middlebrook,* a condition was implied in the subordination to the lender based upon a condition expressed in the subordination clause of the agreement between the seller and the borrower. In the matter at hand there is no subordination clause between Sellers and Borrowers which is alleged to have been the basis for obtaining the Sellers' subordination to SBA.[3]

---

**3.** The original record certified by the Clerk of the United States District Court for the District of Maryland contains only that court's opinion and the certified question. A joint record extract has been submitted here which sets forth certain of the documents including both purchase money deeds of trust made by the Borrowers. The trust deed for the benefit of The Flag Harbor Corporation contains the following provision:

That the Trustees hereunder shall be required, without the necessity of obtaining the prior consent or joinder of the deed of trust note holder, to subordinate *not more than approximately 50% of the property to any phase of development of* the *said* deed of trust to any bona fide construction and/or permanent loan, land acquisition, land development, or loans placed from time to time

Rather, Sellers and Borrowers directly entered into the agreements subordinating specifically to the SBA loan. Those subordination agreements are unconditional and there is no other agreement relied upon from which a conditional or limited subordination can be implied.[4] It is therefore unnecessary for us to determine in this case whether Maryland law recognizes an implied condition as was done in *Miller* and *Middlebrook.*

Thus the issue resolves to whether there is a duty on the lender, enforceable by the seller, to see to the application of the loan proceeds where the purpose of the loan is to make improvements or repairs. As indicated above, the majority of courts have determined there is no such duty.

> The general rule throughout the United States is that where a landowner agrees to subordinate his fee interest to a mortgage lien for the purposes of obtaining a construction loan, without an express covenant from the mortgagee (or lessee-developer) to the landowner, to see to the application of the sums advanced, possible diversion of funds by the mortgagor-developer is a risk assumed by the landowner, unless the latter is able to demonstrate

upon the subject property or any portion or portions thereof, without curtailment and at no cost to the Grantor.

The trust deed for the benefit of Eunice L. Rockhill is the same but for the italicized words.

4. Also included in the joint record extract is Sellers' counterclaim, paragraph 14 of which alleges in part:

> That the Plaintiffs' execution of the Subordination Agreements heretofore referred to was based entirely upon the representation that the SBA would properly administer its loan ... to insure compliance with its loan provisions.

At oral argument Sellers took the position that an express representation by an authorized representative of SBA is not required in order to state a cause of action. It is Sellers' position that a representation by the Borrowers, in a transaction which is structured as the one presented here, can be considered an implied representation of SBA. In support of this position Sellers referred to Cambridge Acceptance Corporation v. Hockstein, 102 N.J. Super. 435, 246 A.2d 138 (App. Div. 1968). Sellers' theory of implied representation is not substantially distinguishable from judicial recognition of a legal duty on the part of the lender, which is discussed, *infra.*

fraud or collusion between the mortgagor-developer and the mortgagee.

*Grenada Ready-Mix Concrete, Inc. v. Watkins,* 453 F. Supp. 1298, 1313 (N.D. Miss. 1978). *Accord, Carlsberg Resources Corp. v. Cambria Savings & Loan Ass'n.,* 413 F. Supp. 880, 886 (W.D. Pa. 1976) (claim against lender by assignee of landowner-borrower), *aff'd on other grounds,* 554 F.2d 1254 (3d Cir. 1977); *Fries v. Broadway Federal Savings & Loan Ass'n.,* 258 Cal. App. 2d 119, 65 Cal. Rptr. 460 (1968) (*Miller v. Citizens Savings & Loan Ass'n., supra,* distinguished because, *inter alia,* there was no showing that Broadway Federal knew of an alleged oral agreement between the owner and the borrower that the loan would be used only for clearing and for new construction); *Gill v. Mission Savings & Loan Ass'n.,* 236 Cal. App. 2d 753, 757, 46 Cal. Rptr. 456, 459 (1965) ("The fact [lender] had knowledge of an agreement between [sellers] and the [borrower] that the loans from [lender] would be used for construction purposes, and that this was the reason [sellers] agreed to subordinate their deeds of trust to those executed in favor of [lender] is not a circumstance motivating public policy imposition upon [lender] of a duty to exercise care to effect the agreement between [sellers] and the [borrower]."); *Matthews v. Hinton,* 234 Cal. App. 2d 736, 742, 44 Cal. Rptr. 692, 697 (1965) ("Diamond, the lender, was under no obligation to see that the loan money was used in accordance with a contract to which it was not in privity."); *Pope Heating & Air Conditioning Co. v. Garrett-Bromfield Mortgage Co.,* 480 P.2d 602 (Colo. App. 1971) (unconditional subordination of mechanics' lien claim to loan and no collusion); *Drobnick v. Western Fed. Savings & Loan Ass'n.,* 479 P.2d 393 (Colo. App. 1970) (no express condition in subordination agreement and no collusion); *First Conn. Small Business Investment Co. v. Arba, Inc.,* 170 Conn. 168, 177, 365 A.2d 100, 104 (1976) ("In the absence of such collusion, or an express agreement, the mortgagee given priority is under no obligation to see that moneys it advances are employed by the borrower in the manner contemplated by the subordinated purchase money mortgagee."); *Roberts v. Harkins,* 292 So. 2d 603 (Fla. App.),

cert. denied, 302 So. 2d 417 (Fla. 1974); *Iowa Loan & Trust Co. v. Plewe*, 202 Iowa 79, 209 N.W. 399 (1926); *Hyatt v. Maryland Fed. Savings & Loan Ass'n.*, 42 Md. App. 623, 402 A.2d 118 (1979) (invoking and applying general rule); *Kennedy v. Betts*, 33 Md. App. 258, 364 A.2d 74 (1976) (applying general rule as an alternate ground of decision); *Cambridge Acceptance Corp. v. Hockstein*, 102 N.J. Super. 435, 246 A.2d 138 (App. Div. 1968) (discussed *infra* — recognizing general rule but not applying it); *Brooklyn Trust Co. v. Fairfield Gardens, Inc.*, 260 N.Y. 16, 182 N.E. 231 (1932); *Forest, Inc. of Knoxville v. Guaranty Mortgage Co.*, 534 S.W.2d 853 (Tenn. App. 1975); *Fandel, Inc. v. First of Denver Mortgage Investors*, 522 S.W.2d 721 (Tex. Civ. App. 1975); *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 241 S.E.2d 778 (1978) (expressly approving general rule and expressly rejecting the principle of implied conditional subordination of *Middlebrook-Anderson Co.);* 6 *American Law of Property* § 16.106D, at 218 (A.J. Casner ed. 1952); G. Osborne, G. Nelson and D. Whitman, *Real Estate Finance Law* 786 (1979). *See also Ross v. Continental Mortgage Investors,* 404 F. Supp. 922, 925 (E.D. La. 1975); *Anglo-American Savings & Loan Ass'n. v. Campbell,* 13 App. D.C. 581 (1898).

Sellers, however, rely on three decisions which reach a contrary result. *Commercial Standard Insurance Co. v. Bank of America,* 57 Cal. App. 3d 241, 129 Cal. Rptr. 91 (1976) held there was a duty owed by the lender to the surety on a performance bond posted by the builder under a construction contract with the owner who was the construction borrower. The lender had agreed with the owner to disburse the loan funds to the contractor for work completed as evidenced by inspection reports supplied by the lender's employees. In litigation following the contractor's default, the surety's claim over against the lender was held good against demurrer. The court weighed policy considerations on the issue of imposition of the duty as claimed. It found the loss foreseeable, that imposition of a duty would cause the bank to exercise due care in future cases and that it would probably impose on the bank the

burden of employing persons competent to evaluate the progress of construction. On the other hand, it considered the surety in as good a position as the lender to spread the risk of improper disbursement equitably throughout the construction industry. The balance was tipped in favor of imposing the duty because Cal. Civ. Code § 1714 (West 1973) provides: "Every one is responsible . . . for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself." Because there was no public policy ground which clearly supported an exception to this statutory principle, the statute was applied to the lender. *Commercial Standard Insurance Company* is distinguishable in light of this California statute.

Appellants also cite *Cook v. Citizens Savings & Loan Ass'n.,* 346 So. 2d 370 (Miss. 1977). A builder's lien was held to attach to the funds realized by the construction lender on foreclosure because in "paying out construction funds, [lender] should have used reasonable diligence to see that the funds were actually used in payment of materials or other costs of construction. *Southern Life Insurance Co. v. Pollard Appliance Co.,* 247 Miss. 211, 150 So. 2d 416 (1963)." *Id.* at 372. The reference to *Southern Life* makes clear that the court in *Cook* is referring to a rule of Mississippi mechanics' lien law under which "a construction mortgagee has preference over materialmen and laborers only to the extent that its funds actually go into the construction." *Southern Life Insurance Co. v. Pollard Appliance Co., supra,* 247 Miss. at 221, 150 So. 2d at 420.

The authority of *Cook* as support for the position of Sellers in the case at hand is greatly undermined by *Grenada Ready-Mix Concrete, Inc. v. Watkins, supra.* A ground lessor had "subordinated" to construction financing. In a diversity action injunctive and monetary relief was sought by the lessor based on an implied contractual duty of the lender and on an asserted equitable duty to avoid manifest injury to the subordinator where there had been a cost overrun of $114,998 on the $1,125,000 construction loan under which

$1,090,115 had been disbursed. Application of the rule in *Cook v. Citizens Savings & Loan Ass'n., supra,* for the benefit of the lessor was specifically argued. The federal court was of the opinion that the Mississippi Supreme Court would adopt the majority rule because it had

> consistently followed what may fairly be regarded as a conservative view in supporting the priority of mortgagees who exercise ordinary care in the disbursement of their funds, even against the claims of unpaid materialmen or laborers-claimants who stand upon a much higher plane than would the subordinated landowner who contributes no materials or efforts to the construction job, and who has at his disposal a means for protecting his interests in any commercial venture by insisting upon the inclusion of protective language in the documents comprising the agreement. [*Grenada Ready-Mix Concrete, Inc. v. Watkins, supra,* 453 F. Supp. at 1314.]

As authority for a duty of loan supervision on SBA, Sellers stress *Cambridge Acceptance Corp. v. Hockstein, supra,*[5] a *per curiam* opinion of the Appellate Division of the Supreme Court of New Jersey which affirmed the Chancery Division, reported as *Cambridge Acceptance Corp. v. American National Motor Inns, Inc.,* 96 N.J. Super. 183, 232 A.2d 692 (1967). There the ground lessor, the lessee and the lender entered into a subordination agreement which recited that lender *"has agreed to advance construction monies* to assist in the . . . construction of the aforementioned motel building . . . and [lessee] has agreed to execute and deliver its mortgage *as security for the construction loan . . . ." Id.* at 189, 232 A.2d at 695 (Emphasis in text). It appeared from a memorandum of loan agreement, to which the lessor was not a party, that the $100,000 loan was for the general corporate purposes of the lessee which was engaged in motel development at a number of locations. As construed by the

---

**5.** *Hockstein* has been followed in Fikes v. First Fed. Sav. & L. Ass'n., 533 P.2d 251 (Alaska 1975).

appellate court, the documents did not stipulate that the lessor's subordination was limited to a lien for moneys advanced which were actually applied to construction. It read the documents as evidencing on the part of the lessor no more than "an expectation and intention that the construction [would] actually take place by use of the money borrowed." *Cambridge Acceptance Corp. v. Hockstein, supra,* 102 N.J. Super. at 438, 246 A.2d at 140. The court recognized the general rule and cited many of the cases in support thereof which are set forth above. Nevertheless, it affirmed a judgment in favor of the lessor, as defendant in an action to foreclose the mortgage, and said:

> While, under general principles of mortgage subordination law outlined above, a construction lender taking the benefit of a subordination is not a guarantor to the subordinator or liable to him for mere negligence in seeing to the appropriation of the moneys to the construction, we think plain principles of equity at least call for such a construction lender to make and administer the loan in the conventional manner of a construction lender rather than mask what is essentially a loan on the general credit and reliability of the borrower and the security of the land value as a construction loan, and act accordingly in disbursing the funds. [*Id.* at 440, 246 A.2d at 141.]

The lender in *Hockstein* had "never conceived this loan as, or undertook to administer it in the manner of a conventional construction loan." For these reasons it was held that the lender "is now equitably estopped from asserting the subordination in derogation of the owners' fee interest." *Id.* at 441, 246 A.2d at 141.

We do not view *Hockstein* as on all fours with the instant matter since there is no allegation that SBA internally considered the loan as one based on the general credit of Borrowers, and not as one for repairs. However, Sellers urge that the effect on them is the same as in *Hockstein,* since they allege that *none* of the loan proceeds improved the

properties and enhanced their value, due to breach of duty by SBA.

Appellants' position in essence assumes the existence of standards of loan supervision in the construction lending field which are so basic that compliance with them can be said to be a legal duty or an implied condition of the subordination. The many cases which have rejected any duty, absent an express agreement between lender and subordinator, belie this assumption. On the other hand, the relatively few cases which have applied what we have ranked as theories 4 and 5 do not represent a developing body of case law expanding the liability of lenders in this area. *Cf. Phipps v. General Motors Corp.*, 278 Md. 337, 341, 363 A.2d 955, 957 (1976). *Hockstein* and the California decisions have generated substantially less than unanimous response. *See Grenada Ready-Mix Concrete, Inc. v. Watkins, supra; Carlsberg Resources Corp. v. Cambria Savings & Loan Ass'n., supra; First Conn. Small Business Investment Co. v. Arba, Inc., supra; Roberts v. Harkins, supra; Forest, Inc. v. Guaranty Mortgage Co., supra; Fandel, Inc. v. First of Denver Mortgage Investors, supra; Tuscarora, Inc. v. B.V.A. Credit Corp., supra.*

It should also be observed that there are policy considerations, rooted in other California statutes, which in part explain the California decisions discussed above. Cal. Civ. Proc. Code § 580b (West 1976) prohibits a deficiency judgment "after any sale of real property . . . under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property . . . ." [6] *See Middlebrook-Anderson Co. v. Southwest Savings & Loan Ass'n., supra*, 18 Cal. App. 3d at 1037, 96 Cal. Rptr. at 347; *Miller v. Citizens Savings & Loan Ass'n., supra,* 248 Cal. App. 2d at 659, 56 Cal. Rptr. at 848. Further, under Cal. Civ. Code § 3391(2) (West 1970) a contract cannot be specifically enforced against a promisor "[i]f it is not, as to him, just and

---

[6]. We are not unmindful that the joint record extract reflects the purchase money deeds of trust in the instant matter provide that there shall be no personal liability on the part of the makers of the promissory notes and of the grantors of the deeds of trust, or their heirs or assigns.

reasonable." The Supreme Court of California has interpreted this provision to require that "an enforceable subordination clause must contain terms that will define and minimize the risk that the subordinating liens will impair or destroy a seller's security." *Handy v. Gordon,* 65 Cal. 2d 578, 581, 55 Cal. Rptr. 769, 770-71, 422 P.2d 329, 330-31 (1967). *See Middlebrook-Anderson Co. v. Southwest Savings & Loan Ass'n., supra,* 18 Cal. App. 3d at 1036, 96 Cal. Rptr. at 346.

The principal reason why the majority of courts decline to impose a duty on the lender, absent a contractual basis, is that it is within the power of the subordinator to refuse to subordinate if the terms of the subordination are not acceptable to him. We believe that reasoning remains valid. To find the existence of a legal duty where none is expressed in the contract has much the same effect as judicially rewriting the contract for the parties. In *Jones v. John S. Stubbs & Associates,* 243 Md. 480, 221 A.2d 361 (1966) we reversed the grant against the seller of specific performance of the subordination clause in a purchase money deed of trust in a situation which was not within its terms. We said that "the lower court lacked authority, by construction or otherwise, to read a condition into the agreement to subordinate that was not provided for therein." *Id.* at 484, 221 A.2d at 364.

In addition, the rule for which sellers contend introduces an added element of uncertainty into real estate transactions. A construction mortgage which on the public record enjoys a first lien status under an unqualified subordination agreement can, under Sellers' contentions, be converted into a junior lien. This could occur for a variety of reasons, ranging from fraud, through cost estimating which proves to be too low, to classifying one or more particular payments to be for purposes which have not enhanced the value of the security. Many construction lenders are institutions which invest the savings of countless people, and which are required by law to limit mortgage investments to first liens. Their bargained for priority by subordination should not be subject to reordering dependent on the vagaries of proof under a vague standard.

To the extent that we have guidance from the General Assembly on this matter of policy, it points toward stability in these transactions. Maryland Code (1974), § 3-102 of the Real Property Article provides that any subordination agreement may be recorded. The express reference to subordination agreements was inserted in the recording statutes as part of the revision of the real property laws effected by Chapter 349, § 1 of the 1972 Laws of Maryland, which was prepared with accompanying comments by the Section of Real Property, Planning and Zoning Law of the Maryland State Bar Association. As to present § 3-102 the Section commented: "Subordination agreements have been specifically mentioned to negate an old New York case, Gillig v. Maass, 28 N.Y. 191, which held that subordination agreements could not constitute constructive notice in the absence of an express statutory provision." Expressly legislating to prevent the application of a decision from another jurisdiction which might prevent a recorded subordination agreement from operating as constructive notice gives some indication of a policy that the subordination agreement is the place to look for rights of priority and suggests that we should not reach out to disturb the legal effects of that instrument as written, based upon the results of a tracing of funds disbursed.[7]

For these reasons, we answer the certified question, "No."

> *Certified question answered as above set forth.*
> *Costs to be paid by appellants.*

---

7. At oral argument Sellers additionally suggested estoppel and third party beneficiary theories. Apart from a knowledge of Sellers' general purpose for subordinating which is implicit in the asserted duty which we have rejected, there is no allegation that SBA knew Sellers were giving up their first lien position in reliance on SBA following any particular procedure. Nor does the counterclaim allege facts indicating that the parties to the SBA-Borrowers loan agreement intended to recognize Sellers as the primary party in interest and as the real promisee. Hamilton and Spiegel, Inc. v. Board of Education, 233 Md. 196, 200, 195 A.2d 710, 711-12 (1963).