584 So.2d 110 (1991)
INVERSIONES INMOBILIARIAS INTERNACIONALES DE ORLANDO SOCIEDAD ANOMINA, et al., Appellants,
v.
BARNETT BANK OF CENTRAL FLORIDA, N.A., Appellee.
No. 90-1883.
District Court of Appeal of Florida, Fifth District.
August 1, 1991.
Jerome J. Bornstein of Bornstein & Petree, P.A., Orlando, for appellants.
Dykes C. Everett, W. Graham White and James Edward Cheek, III, of Winderweedle, Haines, Ward & Woodman, P.A., Winter Park, for appellee.
COWART, Judge.
Appellant, Inversiones Inmobiliarias Internacionales de Orlando Sociedad Anomina, et al., (Inversiones), the owner of land, agreed to sell its land to Christopher Mason Company, a land developer, and to take back a purchase money mortgage for the full purchase price and to subordinate its purchase money mortgage to an "acquisition/development and/or construction" mortgage not to exceed $5 million dollars. The transaction was closed and the purchaser obtained a construction mortgage from appellee, Barnett Bank of Central Florida, N.A., (Barnett), which, pursuant to the sales agreement, the purchase money mortgagee subordinated to the construction mortgage. After a few years and some development, Barnett sued to foreclose its construction mortgage, and the subordinated purchase money mortgagee counterclaimed against the construction mortgagee, claiming in effect that the construction mortgagee owed a fiduciary duty to the subordinated purchase money mortgagee and had violated those duties in certain particulars by (1) not supervising the expenditure of funds advanced by the construction mortgagee to the developer-mortgagor, (2) failing to oversee the development, (3) disbursing construction funds to the developer-mortgagor for unauthorized purchases, (4) failing to make the developer-mortgagor account for construction loan proceeds, (5) failing to make the developer-mortgagor account for sales of developed condominium units and (6) releasing condominium units from the construction mortgage without receiving sums from the developer-mortgagor under a revolving line of credit between the developer and the bank construction mortgagee. The trial court entered summary judgment in favor of the construction mortgagee and the subordinated purchase money mortgagee appeals.
We affirm basically on the principle that a developer/construction loan mortgagee (a construction lender) does not owe a fiduciary *111 duty to a purchase money mortgagee who has subordinated his purchase money mortgage.
The vast majority of courts which have addressed this issue have held that where a landowner agrees to subordinate his purchase money mortgage to a mortgage lien for the purpose of obtaining a construction loan without an express covenant from the construction loan mortgagee to the landowner to see to the application of the sums advanced, possible diversion of funds by the mortgagor-developer is a risk assumed by the landowner, unless the latter is able to demonstrate fraud or collusion between the mortgagor-developer and the mortgagee. Rockhill v. United States, 288 Md. 237, 418 A.2d 197 (1980) (and cases cited therein). The rationale for this rule declining to impose a duty on the lender, absent a contractual basis, is that it is within the power of the subordinator to refuse to subordinate if the terms of the subordination are not acceptable to him. Rockhill, 418 A.2d at 204.[1] To find the existence of a legal duty where none is expressed in the contract essentially would be judicial rewriting of the contract. Id. Thus, in Rockhill, the court found that the lender, whose loan was for construction or repair purposes, owed no duty to the subordinating vendors to exercise care that the borrowers applied the loan proceeds to the intended purposes of the loan. Accord Baldwin v. Bright Mortgage Co., 791 P.2d 1182 (Col.App. 1989); Provident Federal Savings & Loan Ass'n v. Idaho Land Developers, Inc., 114 Idaho 453, 757 P.2d 716 (App. 1988); Four Seasons Developers, Inc. v. Security Federal Savings & Loan Ass'n, 8 Ohio App.3d 300, 456 N.E.2d 1344 (1983).
Florida would appear to follow this majority view and not be willing to extend a lender's liability. For instance, in Florida a lender owes no duty to others to supervise the actual construction which it has financed. Napolitano v. Security First Federal Savings & Loan, 533 So.2d 948 (Fla. 5th DCA 1988). In Roberts v. Harkins, 292 So.2d 603 (Fla. 2d DCA 1974), cert. denied, 302 So.2d 417 (Fla. 1974), the court held that an agreement between a prior mortgagee and the mortgagor that any subordination would be for construction purposes only was not binding on the later mortgagee who was not a party to such agreement and that the later mortgagee, who had obtained a subordination agreement from the prior mortgagee could foreclose despite the first mortgagee's claim that there had been no improvements constructed on the property.
The subordinated purchase money mortgagee in this case argues a fiduciary relationship arose in its behalf, relying on Atlantic National Bank of Florida v. Vest, 480 So.2d 1328 (Fla. 2d DCA 1985), rev. denied, 491 So.2d 281 (Fla. 1986), wherein the Second District held that a fiduciary relationship arose between a long time customer of Atlantic Bank, Vest, who arranged for and co-signed a loan from the bank on a car titled in Vest and his step-son's names. In that case, Vest had a direct contractual relationship with the lending bank. Here the subordinated purchase money mortgagee lacked such a relationship with the construction loan mortgagee.
A fiduciary relationship under Florida law is a legally imposed relationship which will be found to exist where a relation of trust and confidence exists between the parties, that is, where confidence is reposed by one party and a trust accepted by the other. Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (1927). In this case the construction loan mortgagee did not expressly assume any fiduciary duty toward Inversiones and in fact clearly announced its non-liability to third parties. The language contained in the revolving line of credit agreement expressly negates any duty to third parties.[2] This also refutes any claim *112 that equitable estoppel can be employed. Equitable estoppel may be applied where the representations of one party reasonably lead another to believe in a certain state of affairs and in reliance on such representations the latter changes his position to his detriment. Head v. Lane, 495 So.2d 821 (Fla. 4th DCA 1986). Given the language in paragraphs 5.10(1) and 10.2 of the credit agreement which Inversiones admits its representative, attorney Fieldman, reviewed and relied upon (Initial Brief at 10), Inversiones could not have been led to believe that Barnett had undertaken to protect its interests.
AFFIRMED.
GOSHORN, C.J., and W. SHARP, J., concur.
NOTES
[1] The minority view relies on general principles of equity as imposing upon a lender a duty in favor of a subordinating party to administer the loan in the conventional manner of a construction lender. See e.g., Cambridge Acceptance Corp. v. American National Motor Inns, Inc., 96 N.J. Super. 183, 232 A.2d 692 (1967).
[2] This agreement, between Barnett and the Christopher Mason Co., provided that "Borrower shall apply all funds received ... to pay for the cost of developing a condominium development and construction of single-family condominium residential units ..." (Section 1.3) and "Borrower covenants that it will receive all advances hereunder as a trust fund to be used to pay for the cost of improving the property in the manner herein described and shall be used for no other purpose other than improvements to the property, but nothing herein shall impose upon the Lender any obligation to see to the proper application of such advance by the Borrower" (Section 5.10(1)). The revolving line of credit agreement provides at section 10.2 as follows:

Section 10.2. Liability of Lender.
10.2(1) To Third Parties.
The Lender shall in no event be responsible or liable to any person other than the Borrower for its disbursement of or failure to disburse the funds or any party thereof, and neither the contractor nor any subcontractor nor materialmen or craftsmen nor laborers nor others shall have any claim or right against the Lender under this Agreement for the Lender's administration thereof ... Nor shall the Lender be liable for the manner in which any disbursements under this contract may be applied by the Borrower... .