[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE:
 I. DOCKET NUMBER 264157 — JUDGMENT ON DAMAGE CLAIMS (SUMMARY JUDGMENT No. 103)
 II. DOCKET NUMBER 264442 — DETERMINATION OF PRIORITIES (MOTION No. 107)
III. DOCKET NUMBER 274897 — JUDGMENT ON SPECIAL DEFENSES (PLEADING No. 115)
FACTUAL AND PROCEDURAL HISTORY
These cases arise out of a condominium project in Monroe, Connecticut, which fell victim to the downturn in the real estate market.
Pat DiNardo (DiNardo), was part owner of certain land in Monroe. He entered into an arrangement with Great Oak Associates (Oak), whereby Oak would procure financing from the First Constitution Bank (FCB) to construct condominiums on land which DiNardo sold to Oak. DiNardo took back a purchase money second mortgage in the amount of Two Million ($2,000,000.00) Dollars. The developer, Oak, obtained initial financing in the amount of Eleven Million Five Hundred Thousand ($11,500,000.00) Dollars from FCB. DiNardo was a limited partner in Oaks and Jeffrey Tallman of the Tallman Development Company was the general partner.
Problems developed with the project and FCB eventually brought a foreclosure action against Oaks naming DiNardo as a subsequent encumbrancer (D.N. 274897). DiNardo raised two special defenses to the foreclosure action: CT Page 9413
1. FCB's mortgage did not disclose the true nature of the loan as a "revolver" ; therefore, it lost its priority over DiNardo's second mortgage as the full extent of the underlying debt could not be gleaned from the document by subsequent encumbrancers.
2. FCB's alleged improper construction advances and failure to abide by the terms of its loan commitment damaged DiNardo and FCB is, therefore, equitably estopped from claiming priority over DiNardo.
DiNardo instituted two suits. In docket number 264157 against FCB he claims damages on the theory that he was a third party beneficiary of the loan agreement between FCB and Oak. He alleges that FCB breached the terms of the loan agreement, particularly as to an interest escrow, thereby causing him monetary loss.
DiNardo's other suit is a foreclosure of his mortgage in which he claims priority over FCB for the same reasons as claimed in his two special defenses to FCB's foreclosure (FCB's failure to reveal the true revolving nature of the loan and equitable estoppel).
FCB's motion to determine priorities in its foreclosure action (274897) and DiNardo's foreclosure action (264442) raise the same issues. The parties agreed that the court would hear evidence and rule on the priority issue in each case.
FCB filed a motion for summary judgment in DiNardo's damage action (D.N. 264157) claiming that, based on the documents submitted and the pleadings, DiNardo was not a third party beneficiary of the loan agreement and FCB is entitled to judgment as a matter of law. The parties agreed that, if the court was of the opinion that a question of material fact existed as to the damage case, the court could decide that question based on the evidence presented on all the issues.
I. DiNARDO'S DAMAGE CLAIMS AGAINST FIRST CONSTITUTION (D.N. 264157, MOTION NO. 103)
The complaint states that the contract embodying FCB's commitment to Oak included the following provision:
 6. Interest Budget: A total of $3,800,000.00 has been budgeted for interest on the loan and on secondary financing including equity.
DiNardo claims that the above contractual language CT Page 9414 served to bestow upon him the status of a third party beneficiary of the contract between FCB and Oak, and that FCB thereby assumed a duty to protect the purported interest budget by its supervision of the first mortgage loan. However, due to the alleged negligent supervision of the loan by FCB, the monies designated to be set aside for DiNardo's protection were ultimately dissipated as the project became more expensive. Neither the first nor second loans were paid off.
FCB has moved for summary judgment, claiming that the complaint fails as a matter of law inasmuch as there was no contractual duty owed DiNardo by FCB. Absent evidence of some voluntary undertaking of a duty to DiNardo, the defendant argues, FCB is entitled to judgment as a matter of law under Connecticut Practice Book 384 (rev'd. to 1978, as updated to October 1, 1990).
The mortgage and the commitment letter are in the record as well as an affidavit by DiNardo which recounts his opinion that he was intended to be a third party beneficiary of the contract between FCB and Oak. There is also an affidavit by an attorney for FCB. It does not appear that either affidavit alleges facts which may be deemed to be in dispute. The plaintiff has also enclosed a deposition transcript which contains more of DiNardo's opinions on the matter. DiNardo argues that the third party beneficiary question is a factual one, requiring evidence as to extra-contractual transactions between the parties and developers so that summary judgment is precluded.
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Wilson v. New Haven, 213 Conn. 277, 279 (1989) (citing Connecticut Practice Book 380). The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real factual issue to be tried. See, e.g., Dowling v. Kielak, 160 Conn. 14, 16 (1970).
The party moving for summary judgment "must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Plouffe v. New York, N.H. H.R. Co.,160 Conn. 482, 487 (1971). "Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." Thompson 
Peck, Inc. v. Harbor Marine Contracting Corp., 203 Conn. 123,131 (1987). CT Page 9415
The contract of commitment and the first mortgage agreement determine the parties' rights and obligations. Each is definite and unambiguous. There is no language in any contract before the court which purports to represent an express agreement between the plaintiff DiNardo and the defendant FCB. There is an acknowledgement of the existence of the second mortgage in DiNardo's favor in the first mortgage agreement at page 7, paragraph 11, and two other references to the purchase money mortgage are made in the first mortgage agreement. Nowhere are these mentions connected to any substantive contractual right, except that paragraph 37 specifies that the second mortgagee shall receive notice of any default under the first mortgage.
The defendant FCB appears to be entitled to summary judgment as a matter of law because FCB owed DiNardo no duty to so supervise the disbursement of funds under the first mortgage agreement as to protect the funds budgeted for interest and secondary financing under the commitment agreement. As the parties did try the case over several days, the court will decide it on the basis of all of the evidence rather than grant the summary judgment motion.
DiNardo's perception of himself as a third party beneficiary does not square with the holding of such cases as Knapp v. New Haven Road Construction Co., 150 Conn. 321, 325
(1963), wherein it was held that:
 The ultimate test to be applied in determining whether a person has a right of action as third party beneficiary is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party beneficiary and that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties. (Emphasis added.)
DiNardo's own testimony is unconvincing. He never dealt directly with anyone from FCB and did not attend the closing of FCB's mortgage to Oak. He simply assumed that the loan agreement was for his benefit. DiNardo was a limited partner of Oak, entitled to financial information about the project. The 3.8 million dollar interest budget figure was in fact supplied to FCB by Jeffrey Tallman, the General Partner of Oak. The evidence falls far short of proving that DiNardo was intended to be a third party beneficiary of the loan agreement. CT Page 9416
FCB was under no contractual duty to DiNardo. Connecticut Bank Trust Co. v. Carriage Lane Associates, 2 CTLR 81 (July 27, 1990, McWeeny, J.), is largely on point. In that case Judge McWeeny found that the bank as construction lender could not be held to owe a duty to the nonparty defendant Hychko even if the bank had failed to observe express contractual terms. This holding was recently upheld by the Connecticut Supreme Court in Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772 (1991). The court states at pages 782-783:
 In support of its argument that it had no duty to Hychoko, F.P. relies on First Connecticut Small Business Investment Co. v. Arba, Inc., 170 Conn. 168, 365 A.2d 100
(1976). In that case, the defendant held a purchase money mortgage on land that he had sold to Arba, Inc. That mortgage contained a clause subordinating it to another mortgage that First Connecticut, an institutional lender, had also placed on the land to secure money it had loaned to Arba, Inc., to develop the property as a mobile home park. When Arba, Inc. defaulted on the loan, the trial court granted First Connecticut's request for strict foreclosure. In granting that request, the trial court held, inter alia, that First Connecticut was under no duty to see that the funds loaned to Arba, Inc., were actually used to develop a mobile home park. On appeal, this court affirmed, holding that "[i]n the absence of. . .collusion, or an express agreement, [a senior mortgagee] is under no obligation to see that moneys it advances are employed by the borrower in the manner contemplated by the subordinated purchase money mortgagee." Id., 177.
 Cases in other jurisdictions have come to the same conclusion. For example, in National Bank of Washington v. Equity Investors, 81 Wash.2d 886, 920, 506 P.2d 20
(1973), the court stated that "[o]utside the contract, the major duty which a construction lender owes to any other party is the duty of good faith; though a loan may be inefficiently managed and with adverse consequences, neither inferior lienors nor absolute guarantors have any recourse against the lender unless it is CT Page 9417 alleged and proved that the lender acted in bad faith." See also Rockhill v. United States, 288 Md. 237, 418 A.2d 197 (1980), and cases cited there in; Brooklyn Trust Co. v. Fairfield Gardens, Inc., 260 N.Y. 16, 182 N.E. 231 (1932). The rationale for refusing to impose on a first mortgagee a duty, other than one of good faith, in the absence of an express agreement, "is that it is within the power of the subordinator to refuse to subordinate if the terms of the subordination are not acceptable to him. . . . To find the existence of a legal duty where none is expressed in the contract has much the same effect as judicially rewriting the contract for the parties." Rockhill v. United States, supra, 252.
The arguments advanced by the present plaintiff echo those of the counterclaimant Hychko in the CBT case quoted and also must fail.
The plain language of the contract at issue does not support the plaintiff's contention that the bank had intended to assume any affirmative obligation to protect plaintiff's interest. The circumstances surrounding the making of the agreements included, according to Mr. DiNardo's own testimony, no direct negotiations or other meetings between bank officers and the plaintiff. The evidence simply does not establish that DiNardo was a beneficiary and there is no evidence of bad faith. The admission by a bank employee that "we blew it", which the plaintiff believes reflects the bank's admission of an obligation to him, may as easily be interpreted as a comment on the bank's eleven million dollar loss as principal lender.
For the foregoing reasons, judgment enters for the defendant.
II. D.N. 264442 DETERMINATION OF PRIORITIES (MOTION NO. 107)
DiNardo's complaint alleges that FCB's first mortgage is inferior in right to his second mortgage. DiNardo claims that the loan made by FCB to Oak was a revolving loan, but the mortgage fails to give sufficient notice of that fact to subsequent mortgagees. Such subsequent mortgagees would be unable to ascertain the extent of the first lien and what security the subsequent mortgagee would have.
DiNardo's other claim is that FCB knew or should have CT Page 9418 known that the interest budget was not being fulfilled and that construction advances were improperly made, all to the impairment of DiNardo's mortgage. Based on these claims, DiNardo claims that FCB should be equitably estopped from claiming priority over DiNardo's mortgage.
A. TRUE NATURE OF LOAN
It is axiomatic that a junior lienor cannot foreclose a senior lienor. If DiNardo cannot prevail on his claims, his action must be dismissed as to FCB.
The closing on the FCB and DiNardo mortgages took place on September 27, 1988. The FCB mortgage secured a construction loan in the amount of $11,500,000.00. The mortgage did not include provisions to the effect that the principal would be reduced as units were sold and that further advances would be made for new construction.
DiNardo argues that the parties intended and had such a revolving loan and the failure to reflect the true nature of the loan violated the doctrine that a mortgage on real property must disclose the nature and extent of the underlying debt. This enables third parties to make informed decisions regarding advancing money to be secured by a subsequent mortgage. Katz v. Arick, 76 Conn. 388 (1904); Stein v. Davidson, 110 Conn. 4
(1929. DiNardo cites Sadd v. Heim, 143 Conn. 582 (1956) in support of his claim. In Sadd a mortgagee lost priority as to part of his debt because the mortgage did not indicate the true nature of the transaction. The mortgage recited a $2,500.00 obligation when the debt was actually $1,250.00.
DiNardo's argument misses the mark. He was hardly an
unknowing third party who relied on recorded mortgage documents. Dart Bogue Co. v. Slosberg, 202 Conn. 566 (1987), states at page 578 that the Sadd doctrine is to "prevent subsequent third parties from being defrauded or otherwise misled by inaccuracies and omissions in the record that conceal the true nature of the secured obligation." Connecticut National Bank v. Esposito,210 Conn. 221 (1989) at 227 states:
 "The purpose of such `reasonable notice' is to prevent parties that are not privy to the transaction from being defrauded or misled."
DiNardo was a limited partner of the borrower with access to all financial details of the development. He saw the commitment letter(s), or at least one of them, stating the details of the transaction. His mortgage was executed as part CT Page 9419 of the closing transaction along with the first mortgage. In fact Oak's mortgage to DiNardo states:
 All promises of this mortgage are subject to prior rights of First Constitution Bank under a first mortgage and grantee may exercise no rights hereunder in conflict with the provisions of the said first mortgage.
DiNardo was not misled by the language in the mortgage deed. He was an experienced developer who took back a purchase money second mortgage with a full awareness of the true nature of the first mortgage loan, and he waived any claim of priority.
B. EQUITABLE ESTOPPEL
DiNardo alleges that FCB induced him to make the purchase money loan by representations in its loan commitment letter(s) to Oak. FCB's alleged failure to maintain 3.8 million dollars as an interest reserve and alleged improper advances breached the terms of the commitment. DiNardo claims he relied on these terms to his detriment and was damaged thereby.
DiNardo's evidence on this claim is unpersuasive. He conceded that 3.8 million dollars would be the interest budget for the entire project which was estimated to cost thirty to forty million dollars. This testimony flies in the face of his claim that he expected 3.8 million dollars to be held back from the initial 11.5 million dollar loan. The evidence proved that 6.489 million dollars was advanced initially to purchase the real estate. This would have left only 1.2 million dollars for initial construction. Reliance must be reasonable under an estoppel theory. Eight Utilities District v. Town of Manchester, 176 Conn. 43, 53 (1978). DiNardo's alleged reliance was unreasonable. Spear-Newman, Inc. v. Modern Floors Corporation, 149 Conn. 88, 91 (1961), is instructive, stating:
 "It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge."
DiNardo certainly had the means, by his own testimony, to know the state of advances and financial matters.
DiNardo put on no evidence to prove that FCB induced him to make the purchase money loan. By his own testimony he CT Page 9420 never talked to anyone from FCB to negotiate the FCB loan. He dealt with people from Tallman Development Company who in turn dealt with FCB. There was no evidence that any intermediary acted on behalf of FCB.
Equitable estoppel has not been proven by a fair preponderance of the evidence. The short answer to DiNardo's claim of improper construction advances is that FCB had the right under the mortgage commitment to make advances in its sole discretion. It had the right, but not the duty to call on Oak to advance funds when needed. FCB had no duty to DiNardo as discussed in Part I, supra, under the holding of CBT v. Carriage Lane Associates, 219 Conn. 722 (1991).
This case is dismissed as to FCB.
III. D.N. 274897 JUDGMENT ON SPECIAL DEFENSES (PLEADING NO. 115)
In this case, DiNardo's two special defenses to FCB's foreclosure are the same as the two claims discussed above in docket number 264442 on the question of priority.
For the reasons stated above, the special defenses have not been proven. The court finds the issues for the plaintiff on the two special defenses.
SUMMARY
I. In 264157, judgment enters for the defendant.
II. In 264442, plaintiff's case against First Constitution Bank is dismissed.
III. In 274897, the court finds for the plaintiff on defendant's two special defenses.
E. EUGENE SPEAR, JUDGE