COBB, Judge.
This appeal presents the question of whether Security First Federal Savings and Loan Association (appellee) was properly granted summary judgment as against Frank and Gaetanina Napolitano (appellants).
The Napolitanos and J.L. Lloyd Construction entered into a construction contract on December 30, 1980, for a single family residence to be built in Palm Coast, Florida, for the price of $47,900.00. The construction contract was contingent on Napolitano obtaining financing of $25,000.00 and the *949 contract itself was subject to the terms of any loan agreement into which the buyer might enter.
In March, 1981, after a loan commitment letter had been sent from Security First to the Napolitanos, Security First and the Na-politanos entered into a construction loan agreement for $25,000.00. This agreement gave the Napolitanos sole responsibility for the completion of construction and the construction procedures. A draw schedule was drafted by Security First on March 4, 1981, along with a notice of commencement that was executed by the Napolitanos and turned over to Security First for the purpose of recordation.
Even though the construction loan agreement contained a clause whereby the owner agreed not to permit the commencement of any work until the note and mortgage had been placed on the record, no one had advised the Napolitanos that the contractor had commenced construction until June of 1981 when this fact was revealed to Napoli-tano by his father. In July of 1981, Mr. Henley, the vice president of Lloyd Construction, phoned Napolitano in New York and requested $10,000.00 at that time and the balance in two weeks. According to Napolitano’s deposition, Napolitano phoned Mr. Heartt, a loan officer for Security First, and explained the situation. Heartt told Napolitano that the house was almost completed and to go ahead and send the money to Lloyd Construction. When asked in deposition, Mr. Heartt could not remember this exact conversation.
Security First was aware in mid-July that construction had begun on the Napolitanos’ home without a notice of commencement being filed. Toward the end of July, 1981, the Napolitanos came to Florida from New York and paid the balance of approximately $15,000.00 to Lloyd Construction. Subsequent to this payment, which together with the first payment represented approximately three draws, the Napolitanos discovered the house was shorter than called for in the specifications.
On August 27, 1981, the mortgage and notice of commencement were recorded. According to Mr. Hope, the branch manager at Security First, a few days after a loan is closed, the notice of commencement is recorded; it was Security First’s custom to record a notice of commencement before construction started to avoid liens on the property taking priority over Security First’s interest. In regard to Security First’s mortgage, according to Heartt’s testimony, three things were needed prior to the loan closing: first, proof of flood insurance; second, proof that monies were deposited in the loan in process (LIP) account; and finally, proof that the soil test had been completed. While conceding that the documents were signed in March of 1981, Heartt maintained they were not final until recorded because of the delay in the soil test results.
On August 28,1981, funds in the amount of $25,000.00 were credited to the Napolita-nos’ draw account by Security First and a disbursement of $4,219.75 was made to Lloyd Construction as draw number 4. Draw number 5, on September 9, 1981, was made to Lloyd Construction by Security First in the amount of $7,185.00. Subsequent to draw number 5, the Napolitanos and Security First began receiving notice of liens by registered mail. Realizing there was a problem with Lloyd Construction, Security First put Lloyd Construction on “bills and requisitions” whereby Lloyd Construction would bring a bill or requisition to the bank and checks were paid directly to the suppliers or materialmen.
The parties soon realized that Lloyd Construction was not going to complete the house. As a result, the Napolitanos had to settle or compromise several liens against their property and ultimately alleged that they had to pay out approximately $16,-000.00 more than the original price of the home. The Napolitanos filed a complaint against Lloyd Construction, Lloyd individually, and Security First. Subsequently, Security First filed a motion for summary judgment which was granted by the trial court.
Under section 713.13, Florida Statutes (1981), an owner or his authorized agent, before actually commencing to improve any real property, shall record a notice of commencement in the clerk’s office. The notice of commencement gives constructive *950 notice that claims of lien may be recorded and may take priority, in that, the lien shall attach and take priority as of the time of recordation of the notice of commencement. In the event a notice of commencement is not filed, then such lien shall attach and take priority as of the time the claim of lien is recorded.
In the instant case, the threshold question is whether Security First was the authorized agent for the Napolitanos as regards the issue of a negligent filing of a notice of commencement. Unlike Design Aluminum, Inc. v. DeSanti, 521 So.2d 285, 287 (Fla. 2d DCA 1988), or MacIntyre v. Greens Pool Service, Inc., 347 So.2d 1081 (Fla. 3d DCA 1977), there is evidence in the record to suggest that Security First was an authorized agent for the Napolita-nos. Notably, under section 713.13, Florida Statutes (1981), only an owner or his authorized agent can record the notice of commencement. By voluntarily recording the notice of commencement, Security First has conceded its position as an authorized agent. As stated by Security First, the loan approval was made contingent on a soil test. The three conditions (flood insurance, transfer to the LIP account, and soil test) were allegedly contained on the back of the loan application and also in the loan commitment letter. What is apparent from the record is that a soil test was needed by Security First prior to recording the mortgage or putting the loan on the books. What is not apparent is why and under what loan document a soil test was needed prior to recording the notice of commencement inasmuch as a lien could jeopardize the interests of the Napolitanos.
No record evidence reveals a loan document directing Security First to wait until receipt of the soil testing data before recording the notice of commencement. Security First had the ability to record the notice of commencement in March. The record shows construction did not begin on the residence until approximately June. Had Security First filed the notice of commencement in March, the current problem might have been avoided. Why Security First delayed in filing a notice of commencement and in notifying the Napolita-nos of that delay after it learned of the commencement of work in July of 1981 is also questionable.
When a lender voluntarily undertakes to record a notice of commencement for an owner, a duty is created and the bank becomes an authorized agent pursuant to section 713.13, Florida Statutes. The lender must record the notice of commencement in a timely manner without regard to any contingencies yet unperformed relating to the approval or recording of a construction loan. Once a duty and a breach of that duty has been established, a genuine issue of material fact exists as to whether the duty and breach is the proximate cause of the claimed damages.
Appellants’ argument that Security First was negligent in approving a foundation survey that was not according to the original specifications and in making inspections is without merit. Florida law is clear that a lender owes no duty to others to supervise construction which it has financed. Armetta v. Clevetrust Realty Investors, 359 So.2d 540 (Fla. 4th DCA), cert, denied, 366 So.2d 879 (Fla.1978); Rice v. First Federal Savings and Loan Association of Lake County, 207 So.2d 22 (Fla. 2d DCA), cert, denied, 212 So.2d 879 (Fla. 1968).
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
DANIEL, J. and NORRIS, W.A., Jr., Associate Judge, concur.