Brooklyn Trust Company, Appellant, *v.* Fairfield Gardens, Inc., et al., Defendants, and Riverdale Home Builders, Inc., Respondent.

(Argued June 10, 1932; decided July 19, 1932.)

*Henry Hetkin, Alexander Rubin* and *Lynn G. Goodnough* for appellant. There is no basis for the decision that the failure to erect garages constituted a failure of consideration so as to defeat the priority of plaintiff's mortgage. (*Jackson* v. *Nicol*, 23 App. Div. 139; 155 N. Y. 697; *Claypool* v. *German Fire Ins. Co.*, 32 Ind. App. 540.) The failure to erect garages could not constitute complete failure of consideration. (Williston on Contracts, § 1456; *Post* v. *Thomas*, 212 N. Y. 264; *De Kay* v. *Bliss*, 120 N. Y. 91; *Matter of Case*, 214 N. Y. 199; *Pollock* v. *Pollock*, 71 N. Y. 137.) The priority of plaintiff's mortgage was not conditioned upon the erection of garages. (*Tipton* v. *Feitner*, 20 N. Y. 423; *Lyon* v. *Hersey*, 103 N. Y. 264; *Claypool* v. *German Fire Ins. Co.*, 32 Ind. App. 540; *Lincoln Trust Co.* v. *Williams Building Corp.*, 229 N. Y. 313.) A building loan mortgagee is

not responsible to the subordinating mortgagee for omissions of the owner. (*Darst* v. *Bates*, 95 Ill. 493; *York Mortgage Corp.* v. *Clotar Construction Corp.*, 254 N. Y. 128; *Tripp* v. *Babcock*, 195 Mass. 1; *Iowa Loan & Trust Co.* v. *Plewe*, 202 Iowa, 79.)

*Clarence B. Plantz* for Title Guarantee and Trust Company, *amicus curiæ*. The building loan company owed no duty to defendant-respondent and was guilty of no fraud. (*York Mortgage Corp.* v. *Clotar Construction Corp.*, 254 N. Y. 128; *Lehnert* v. *Notlim Realty Corp.*, 225 App. Div. 818; 251 N. Y. 340.)

*Sydney A. Syme, William F. Clare, Frederick A. Gill* and *William F. Clare, Jr.*, for respondent. Garages were an integral part of the improvement and so necessary an element to the success of the venture that the failure to build them wrought a substantial change in the nature of the improvement and materially diminished the value of the completed building. (*Stubbe* v. *Adamson*, 220 N. Y. 459; *Postley* v. *Kafka*, 213 App. Div. 595; *People* v. *Tax Commrs.*, 67 Misc. Rep. 474; 143 App. Div. 950.) There was a failure of consideration for the subordination agreement by reason of the failure to build garages. (*Ferris* v. *Hard*, 135 N. Y. 354; *Ward* v. *Textile Co.*, 139 App. Div. 109.) By virtue of the subordination agreement and the ensuing relationship of the parties, duties were imposed on the building loan company to exercise its powers under the building loan agreement so as not to prejudice the interests of the defendant-respondent, and though, as between the lender and the borrower, there were certain privileges of modification, as between the lender and the subordinator, the former could not assent to a modification which would change the subject-matter of the building loan agreement. (2 Pomeroy Eq. Jur. [4th ed.] § 902.)

LEHMAN, J. On October 4th, 1928, the defendant Fairfield Gardens, Inc., executed and delivered to the Prudence Company, Inc., its bond conditioned for the repayment of the " just and full sum of Seven Hundred Thousand Dollars, lawful money of the United States, or so much thereof as may be advanced at any time by the holder of this bond." The bond was secured by a mortgage upon premises in a residential section of the city of New York known as Riverdale. The plaintiff is the assignee of the bond and mortgage. Because of default in some interim payments by the mortgagor, the plaintiff has exercised an election, as provided in such case by the mortgage, to declare due and payable $150,000 of the principal sum advanced and has brought this action for the foreclosure of its mortgage. Its right to a judgment of foreclosure is not disputed. The only question presented upon this appeal is whether the lien of plaintiff's mortgage is superior to the lien of a mortgage held by defendant Riverdale Home Builders, Inc. That question has been decided against the plaintiff in the courts below.

The plaintiff's bond and mortgage were executed and delivered pursuant to the terms of a building loan agreement entered into by the same parties several months before, and the terms of that agreement were incorporated in the mortgage. At the time the building loan agreement was made, the defendant Fairfield Gardens, Inc., did not have title to the property. Title was conveyed to it on July 13th, 1928, by Riverdale Home Builders, Inc., which received back a purchase-money mortgage for $96,400. The building loan agreement provided that advances made thereunder should be secured by a mortgage which should be a " valid first lien " upon the premises. The Fairfield Gardens, Inc., could not comply with that condition of the building loan agreement, unless it paid off the purchase-money mortgage or secured from Riverdale Home Builders, Inc., an instru-

ment subordinating that mortgage to the mortgage to be executed under the building loan agreement.

On August 22nd, 1928, Fairfield Gardens, Inc., delivered to Riverdale Home Builders, Inc., an additional mortgage in the sum of $47,400 for moneys loaned and made an agreement consolidating the two mortgages. On the same date, Riverdale Home Builders, Inc., executed an instrument described as a " subordination agreement " between Riverdale Home Builders, Inc., designated as party of the first part, and Prudence Company, Inc., designated as party of the second part. The Prudence Company, though designated party of the second part, did not sign that " agreement," and, at least until it was thereafter delivered and accepted by Prudence Company, Inc., that corporation was not a party to the agreement. It was procured by the Fairfield Gardens, Inc., the owner of the equity, in order to enable it to comply with the terms of the building loan agreement that the mortgage ·to be executed as security for the building loan would be a " valid first lien " on the premises. Though dated *August 22nd, 1928*, the instrument recites that Fairfield Gardens, Inc., is about to execute and deliver to the " party of the second part " a bond and mortgage to secure the principal sum of seven hundred thousand dollars and interest, " *dated the 4th day of October 1928*," and covering the premises already covered by the consolidated mortgage of the " party of the first part," and that " said party of the second part has refused to make said loan of Seven Hundred Thousand Dollars unless said first consolidated mortgage is subordinated in lien to the lien of said mortgage about to be made to the party of the second part and to all advances heretofore made, or which hereafter may be made to the extent of the last mentioned amount."

Expressly to " induce the said party of the second part to make said loan," Riverdale Home Builders, Inc., covenanted and agreed that its consolidated mortgages

" are and shall continue to be subordinate in lien, to the lien of said mortgage for Seven Hundred Thousand Dollars about to be made to the party of the second part hereto." No obligation on the part of Prudence Company, Inc., was expressed in the instrument and the only act on its part required to make the instrument effective was the advance of moneys under the mortgage to be executed and delivered to it.

The " subordination agreement " and the bond and mortgage dated October 4th, 1928, described in that instrument were executed and delivered to Prudence Company, Inc., to comply with the building loan agreement theretofore made. That agreement had been shown to the Riverdale Home Builders, Inc., and its terms and conditions were expressly incorporated in the new mortgage which it had covenanted should be the first lien on the property. The covenant contained in the so-called subordination agreement was, perhaps, not enforceable at the time the instrument was executed. Then it was merely a promise made without consideration, to induce Prudence Company, Inc., to make the loan to be secured by a first mortgage. It became enforceable if and when the Prudence Company, Inc., was induced thereby to made the stipulated loan. That is not and cannot be disputed, and it is unnecessary to determine whether it became enforceable upon the theory that a promissory estoppel then arose, or a unilateral contract in which promise to subordinate was given by one party in exchange for the act of making the stipulated building loan by the other party. Such distinctions would carry no consequences in this case, for on either theory the priority of plaintiff's mortgage depends upon proof that the mortgagor did the act which the promise to subordinate called for. The problem which is here presented is whether the plaintiff has proven that.

It is said that the Riverdale Home Builders, Inc., was shown the building loan agreement before it promised

to subordinate the lien of its own mortgage to the lien of the mortgage to be delivered to the Prudence Company, Inc., and Riverdale Home Builders, Inc., claims that, in making that promise, it relied on the terms of the building loan agreement. The plaintiff disputes that claim. Here the rights of the parties are the same in either view. The subordination agreement shows on its face that it was intended to apply to a mortgage to be delivered under the building loan agreement, and covered only advances made under that agreement. Riverdale Home Builders, Inc., sought to induce the consummation of the building loan, and no advances made in disregard of the building loan or for other purpose would fall within the protection of the subordination agreement. (*York Mortgage Corp.* v. *Clotar Construction Corp.*, 254 N. Y. 128.)

Undoubtedly Prudence Company, Inc., did enter into the building loan agreement referred to in the subordination agreement. The mortgage under foreclosure was made in accordance therewith and all the advances upon which the plaintiff's claim is based were advances made under the terms of that mortgage. There has been no breach of any duty owed to that mortgager by the mortgagee, under the terms of the building loan agreement or mortgage, and the mortgagor has no defense to the action. All that has been conclusively established by the findings. If the holder of the mortgage subordinated by agreement to the plaintiff's mortgage has any defense, it must be because, by the language of the subordination agreement or through the relations thereby created, some duty to protect the interests of the holder of the subordinated mortgage was placed upon the lender, in accordance with the terms of the building loan agreement.

In order to simplify our consideration of the problem whether under the circumstances of this case such a duty arose, we accept all the findings of fact without, at present, analyzing the appellant's claim that some are not sustained by competent evidence. The building loan agree-

ment provided that the borrower shall erect on the premises " a modern high class seven story and basement garden apartment of fire proof construction containing not less than 1,594,400 cubic feet, 440 rooms and 126 baths *and 2 or more fireproof garages* containing 150,000 cubic feet." That provision was, of course, inserted primarily for the benefit of the lender. It was intended as assurance to the lender that moneys advanced would be used for an improvement which would increase the value of the mortgaged land and thus furnish adequate security for the repayment of the advances. Accordingly the loan agreement and the mortgage given thereunder provided that " the Lender's obligation to make further advances shall cease  *  *  *  if the Borrower does not erect said building strictly in accordance with plans and specifications approved in writing by the Lender and conforming with all laws and municipal regulations, orders and requirements." Plans for the erection of the apartment building without the accessory garages were approved by the lender. They conformed with all laws and municipal regulations. Permits for the erection of the building were obtained from the municipal authorities and the building was erected. No permits for the erection of the garages was ever obtained, and no garages ever erected. To that extent the purpose of the building loan agreement has been frustrated. The courts below have held that because of such frustration the stipulated consideration for the subordination agreement has failed and the agreement is not enforceable.

The premises are situated in a district in which no garages may be erected without a modification or variation of the zoning regulations of the city of New York. At the time the subordination agreement was signed, both parties had the same means of information in regard to the zoning regulations. At the time when the plans for the erection of the apartment house without garages was approved by Prudence Company, Inc., and the first

advances made under the building loan agreement, it was still ignorant of that fact. It could then have refused to make any advances until complete plans were submitted and approved. It was not required by the building loan agreement to do so. That agreement expressly permitted advances to be made even though obligation to do so had ceased, and at that time the lender did not know that there was any legal obstacle to the creation of the garages or that they would not be erected. It learned of the legal obstacle some months thereafter. It did not learn that the obstacle would not be overcome till a short time before the last advance was made. Even then it did not inform Riverdale Home Builders, Inc., of these facts or avail itself of its right to cease making advances. For its own protection it arranged for further advances in order to permit the completion of the apartment house though without the garages.

The trial justice has found that by reason of the character of the neighborhood in which the said building was constructed, garages were necessary as an accessory to the building contemplated in the building loan agreement " to be erected, in order to make the same rentable at an adequate rental," and further, " That the failure to erect the building with garages has resulted in a house of an entirely different character than that contemplated by the building loan agreement." Thus it appears that the lender, perhaps through its own lack of care, has been disappointed in its expectation that as security for its loan it would hold a mortgage on property improved by the erection of an apartment house with an accessory garage necessary to make the apartment house profitable. Doubtless the holder of the subordinated mortgage expected that through the building loan agreement the lien of its mortgage would also attach to a property improved as provided in the building loan agreement. It did not, however, stipulate that in return for a subordination agreement it must obtain a promise from the

lender that the lender would guarantee the erection of such an apartment house, or even exercise care to see that moneys advanced would be applied to such erection. It was content to subordinate its existing mortgage in order to induce a lender to advance moneys which the *borrower* agreed to apply in that manner. No adequate reason or authority is shown to sustain the conclusion of the courts below that the lender assumed any duty other than that of good faith towards the holder of the original mortgage or that conditions precedent to be performed by the *borrower* must be satisfied, especially where the building loan agreement gives to the lender an express right to waive such conditions precedent. Such cases as *Pennsylvania Steel Co.* v. *Title Guarantee & Trust Co.* (193 N. Y. 37); *York Mortgage Corp.* v. *Clotar Construction Corp.* (*supra*); *Darst* v. *Bates* (95 Ill. 493); *Tripp* v. *Babcock* (195 Mass. 1) point unmistakably to the contrary conclusion.

The problem would be different if the lender co-operated with the borrower in diverting moneys advanced from the purposes of erecting the building described in the building loan contract. (Cf. *York Mortgage Corp.* v. *Clotar Construction Corp., supra.*) Here the lender failed, originally, only in care to protect its own interests and then availed itself of its rights under the building loan agreement to continue its advances so that the loss might not be increased. No want of good faith is shown by failure to notify the holder of the subordinated mortgage that the borrower would not complete the building as contemplated, for it had an absolute right to proceed as it did even if the holder of that mortgage had protested. Indeed, it is difficult to see how further advances could injure the holder of that mortgage. The plaintiff's mortgage was a prior lien for advances previously made, and if subsequent advances made security for prior advances more adequate, that might redound to the benefit of subordinate lienors; it could not injure them.

These conclusions render it unnecessary to consider the other points urged by the appellant.

The judgments should be reversed, with costs in all courts, and judgment of foreclosure granted as demanded in the complaint.

KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur; POUND, Ch. J., not voting; CRANE, J., not sitting.

Judgment accordingly.