FIRST CONNECTICUT SMALL BUSINESS INVESTMENT COMPANY *v.* ARBA, INC., ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued November 18, 1975—decision released February 3, 1976

*Arnold W. Aronson,* for the appellant (defendant Wong).

*Charles J. Willinger, Jr.,* with whom, on the brief, was *Jerome Goldman,* for the appellee (plaintiff).

HOUSE, C. J. This is an appeal by the defendant John Y. K. Wong (hereafter sometimes referred to as the defendant) from a June 21, 1974, judgment of the Court of Common Pleas in New London County granting to the plaintiff strict foreclosure of a mortgage. The court concluded that Wong was estopped from utilizing the Statute of Frauds as a defense to the plaintiff's claim for the priority of its mortgage over an earlier recorded mortgage held by Wong which contained a clause "automatically" subordinating it to a first mortgage to be placed on the mortgaged premises. The judgment determined that by virtue of the subordination provision the plaintiff's mortgage was superior to the earlier purchase money mortgage held by Wong. The correctness of this decision as to priority of the two mortgages is the principal issue raised on this appeal.

Although the defendant in his assignments of error attacked many of the court's findings of fact and conclusions, he has limited his brief to consideration of three issues: (1) "Was the trial court in error in concluding that the defendant John Y. K. Wong was estopped from asserting the Statute of

Frauds as a defense to the plaintiff's foreclosure action?"; (2) "Was the trial court in error in concluding that the plaintiff could claim an estoppel?"; and (3) "Was the trial court in error in concluding that an institutional lender has no obligation to a subordinating party to act in good faith so as not to unnecessarily injure him?" We treat as abandoned the assignments of error which have not been briefed. *State* v. *Gosselin,* 169 Conn. 377, 379, 363 A.2d 100; *Hartford National Bank & Trust Co.* v. *Redevelopment Agency,* 164 Conn. 337, 338, 321 A.2d 469; *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495.

The finding discloses the following basic facts: Over a period of about one year, Wong had invested approximately $5000 of his money in the purchase of 142 acres of land in Montville. On February 26, 1971, he executed a bond for deed whereby he agreed to sell the land to Arthur G. Woods. The purchase price was $162,000 payable as follows: $33,000 in cash; $22,000 for release of certain liens and the $107,000 balance by purchase money note and mortgage. Wong's bond for deed provided that the mortgage to him would be subordinated to the mortgage of any bank or lending institution loaning money for the purpose of developing the land as a mobile home park. On May 4, 1971, a date prior to the time he acquired title, Woods executed a bond for deed to sell the 142 acres to the named defendant, Arba, Inc., for $300,000. Arba, Inc., agreed, as part of the purchase price, to assume the payment of the $107,000 purchase money mortgage note which Woods was to give to Wong pursuant to the terms of their bond for deed. Thereafter, Arba, Inc., sought to negotiate a loan of $100,000 from the

plaintiff, First Connecticut Small Business Investment Company, to be secured by a first mortgage on the land. The plaintiff hired an appraiser who reported the value of the land to be between $90,000 and $120,000 under the existing one acre per lot residential zoning. The appraiser informed the plaintiff, however, that the property had an additional speculative value because of the potential of developing it into a mobile home park, a use which could be permitted under Montville zoning regulations. But the appraiser warned the plaintiff that, as a lender with no means of participating in the potential value of the land as a mobile home park, it had something substantial to lose. The plaintiff agreed to loan $84,000.

In order to close the several transactions involved, as a matter of convenience as well as of necessity so that the cash consideration for the conveyance from Wong to Woods, nearly $55,000, could be obtained, the closing of the plaintiff's mortgage was consummated in Bridgeport on the morning of May 24, 1971. Attorney Richard J. Cromie, acting as agent for Woods and Arba, Inc., then held in escrow the note, mortgage deed, and a series of the plaintiff's checks totaling $70,234 with instructions not to disburse the checks until Arba's mortgage deed was recorded in the Montville land records as a valid first mortgage on the land. Later the same day, at the New London law office of Hyman Wilensky, attorney for Wong, a deed from Wong to Woods which had been executed earlier was delivered to Attorney Cromie in exchange for the plaintiff's check for $33,000, the mortgage deed from Woods to Wong, various releases and several checks to pay off prior liens for work performed on the land. Attorney Wilensky, acting for Wong,

accepted the mortgage deed from Woods to Wong, prepared by Attorney Cromie, after reviewing it and with full knowledge that it contained a subordination clause providing that the mortgage was "[h]ereby *automatically subordinated* to a first mortgage to be placed on the above described premises to any State Savings Bank, State Commercial Bank, Federal Savings & Loan Association, National Commercial Bank, or *to the First Connecticut Small Business Investment Company, providing that the said mortgage does not exceed $100,000.00* in amount and *further providing that the mortgagor is either Arthur G. Woods or Arba, Inc.,* a Connecticut corporation with its principal office in the Town of East Hartford, County of Hartford and State of Connecticut. *No further documents will be necessary to effect this automatic subordination.*" (Emphasis added.) The clause, unlike the agreement in the bond for deed, did not have language decribing the loan as a development loan.

The court expressly found that it was the intent of Wong and the plaintiff that the plaintiff would receive a first mortgage on the land and in accepting the deed Attorney Wilensky realized that by the terms of the mortgage deed from Woods to Wong, the plaintiff would become a first mortgagee, that the mortgage deed would be recorded on the land records, and that no further action would be necessary to effectuate the automatic subordination. Attorney Cromie then recorded on the land records on May 24, 1971, the following documents: warranty deed from Wong to Woods at 4:58 p.m.; mortgage deed with automatic subordination clause from Woods to Wong at 5:00 p.m.; warranty deed from Woods to Arba, Inc., at 5:02 p.m.; mortgage deed from Arba, Inc., to the plaintiff at 5:03 p.m.

Thereafter, Arba, Inc., failed to obtain zoning for the mobile home park and failed to make any payments to the plaintiff on the mortgage loan, and the plaintiff instituted foreclosure proceedings.

At the trial, Wong asserted that the subordination agreements contained in the bond for deed to Woods which he executed and in the mortgage deed from Woods to Wong violated the Statute of Frauds and were, therefore, unenforceable as to him and he has briefed his assignment of error that the court erred in holding that he was estopped from asserting this claim. It has been Wong's claim that under the provisions of the Statute of Frauds the subordination agreements in the bond for deed and in Woods' mortgage to him are unenforceable and that the plaintiff is barred from asserting the priority of its mortgage because that priority rests on a statement incorporated in a mortgage deed which was not signed by him. His further claim is that if there were an agreement on his part it fails to meet the requirements of the statute since there was neither an interest rate nor a maturity date set forth in the agreement.

The trial court found no merit to this defense. On the merits, it concluded that even though the subordination clause in both instruments did not state the amount of the loan or the maturity date, nevertheless, the plaintiff had priority since the automatic subordination clauses became fully executed and performed by virtue of the mortgage from Arba, Inc., to the plaintiff. In addition, it concluded that despite the deficiency in the bond for deed and mortgage deed from Woods to Wong the plaintiff's mortgage had priority since the plaintiff partly performed by virtue of its $33,000 check

used by Wong to close his sale to Woods and by virtue of its checks totaling $22,000 used to satisfy outstanding liens on Wong's property and to pay for work done on his property. In addition to these conclusions, the court also found that it was the intent of both Wong and the plaintiff that the plaintiff would receive a first mortgage on the land, that the plaintiff relied on Wong's acceptance of Woods' mortgage containing the subordination clause and changed its position because of the subordination agreement, prejudicing itself thereby and suffering detriment as a result of that reliance. As a result of these conclusions, the court reached the further conclusion that by reason of his knowledge and acceptance of the automatic subordination agreement contained in Wong's mortgage, Wong is estopped from claiming that the subordination agreement did not contain the requisite specificity.

It is unnecessary to discuss all of these conclusions of the court. We agree with the observation which the court made in its memorandum of decision that in the circumstances of this case estoppel "must be made available to thwart real injustice against the plaintiff by the attempt of Wong to use the statute as an engine of fraud." As it further commented: "In short, Wong wants his cake although he has eaten it. He has obtained nearly $55,000 from the plaintiff on the strength of his subordination agreement, which he now disavows by trying to hide behind the statute of frauds. It is found Wong is estopped from utilizing the statute as a defense."

The court properly applied the doctrine of estoppel in these circumstances. When the Statute of Frauds is pleaded the doctrine may be applied to

prevent the use of that statute to accomplish a fraud. *Wolfe* v. *Wallingford Bank & Trust Co.,* 124 Conn. 507, 515, 1 A.2d 146. " 'There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done.' *Fawcett* v. *New Haven Organ Co.,* 47 Conn. 224, 227; *Jensen* v. *Nationwide Mutual Ins. Co.,* . . . [158 Conn. 251, 261, 259 A.2d 598]; *Spear-Newman, Inc.* v. *Modern Floors Corporation,* . . . [149 Conn. 88, 91, 175 A.2d 565]; *Tradesmens National Bank* v. *Minor,* 122 Conn. 419, 424, 190 A. 270." *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 563, 316 A.2d 394; see 31 C.J.S., Estoppel, § 59; 28 Am. Jur. 2d, Estoppel and Waiver, § 35. The findings of the court are supported by the evidence in the appendices to the briefs and in turn support the conclusion of the court that the circumstances justified the application of the estoppel doctrine.

The remaining claim of the defendant is that the trial court was in error in concluding that the plaintiff as an institutional lender had no obligation to a subordinating party to act in good faith "so as not to unnecessarily injure him." The short answer to this claim is that the court reached no such conclusion. The court did conclude that the plaintiff was under no duty to see that the funds loaned to Arba, Inc., were used to develop the land as a mobile home park, that the loan was not usurious, and that the plaintiff had no duty to ascertain whether its acts might have a prejudicial effect on Wong's purchase money mortgage. The principal

authority cited by the defendant in fact supports the court's conclusions. *Brooklyn Trust Co.* v. *Fairfield Gardens, Inc.,* 260 N.Y. 16, 182 N.E. 231.

In that case, the holder of a purchase money mortgage on unimproved real property agreed to subordinate his lien to a building loan mortgage in which a building loan contract was incorporated by reference. The contract required the construction of garages with apartments. Because of zoning problems, the garages were never built, and despite the lender's right to refuse to advance any further funds, it made all advances without notifying the subordinated mortgagee. Upon default and foreclosure, the trial court found the lender's mortgage to be inferior in right to the subordinated mortgage. In reversing the judgment, the appellate court noted: "The problem would be different if the lender co-operated with the borrower in diverting moneys advanced from the purposes of erecting the building described in the building loan contract. . . . No want of good faith is shown by failure to notify the holder of the subordinated mortgage that the borrower would not complete the building as contemplated, for it had an absolute right to proceed as it did even if the holder of that mortgage had protested. Indeed, it is difficult to see how further advances could injure the holder of that mortgage. The plaintiff's mortgage was a prior lien for advances previously made, and if subsequent advances made security for prior advances more adequate, that might redound to the benefit of subordinate lienors; it could not injure them." Id., 25.

In the present case, there is no claim of collusion made against the plaintiff and in fact the defendant himself accepted most of the funds and derived

benefit therefrom. In the absence of such collusion, or an express agreement, the mortgagee given priority is under no obligation to see that moneys it advances are employed by the borrower in the manner contemplated by the subordinated purchase money mortgagee. See *Cambridge Acceptance Corporation* v. *Hockstein,* 102 N.J. Super. 435, 246 A.2d 138; *Brooklyn Trust Co.* v. *Fairfield Gardens, Inc.,* supra; note, 42 Yale L.J. 980, 982. Wong's claims that the plaintiff did not act in good faith simply are not substantiated by the facts. Neither the bond for deed nor the mortgage from Woods to Wong envisioned a construction mortgage, and Wong's attorney and agent knew this. Under the circumstances, the trial court properly concluded that the plaintiff had no duty to see that the funds loaned to Arba, Inc., were used to develop the land as a mobile home park.

There is no error.

In this opinion the other judges concurred.