[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION FOR PRE-JUDGMENT REMEDY
Plaintiff is about to commence an action against PLP partners, John W. Lombard and Alfred A. Pedemonti seeking to attach real estate to secure a claim of $60,000.00. The defendants claim no probable cause.
Plaintiff alleges, in his pre-judgment remedy affidavit, that he was given a note for $50,000.00 in lieu of cash for a real estate commission. Plaintiff alleges that a sales agreement was executed on January 12, 1989 in which a brokerage commission of $200,000.00 was to be paid. The plaintiff and another broker, George Pelletier, were to be paid, separately from two other brokers, the sum of $100,000.00. The plaintiff's share of the $100,000.00 was $50,000.00.
At the closing of subject real estate, on August 23, 1989, the plaintiff was informed that no cash was available to pay his commission. Instead, he was given the note for $50,000.00 to be paid within six months. Although the plaintiff alleges the execution of a "Note" for $50,000.00, the copy of the note made as exhibit to the application recites the following:
August 23, 1989
TO: Mr. Alan Weidt
Dear Mr. Weidt:
 The undersigned, being the only partners of PLP Realty Partners, confirm their obligation to you to remit to you within six months the sum of $50,000.00 arising out of your services as a broker in Connecticut with the purchase by PLP Realty Partners of property located at 1021 Asylum Avenue, 31 Gillett Street, and 950 Asylum Avenue, Hartford, Connecticut.
 Very truly yours, s/ John W. Lombard s/ Alfred A. Pedemonti
The defendants oppose the application for a pre-judgment remedy claiming that there is no probable cause. The basis of their claim is that the plaintiff's action is for the collection of a real estate commission, and that the plaintiff has failed to allege the existence of a listing agreement in accordance with Conn. Gen. Stat. sec. 20-325a. CT Page 3224
The plaintiff argues that the executed sales agreement and the attorney's transmittal letter with the sales agreement constitutes a satisfaction of Conn. Gen. Stat. sec.20-325a. In the alternative, the plaintiff, in the second count is suing on the "Note." The third and last count of plaintiff's complaint is based upon the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. sec. 42-110b (CUTPA).
The first issue is whether or not, in the first count, the executed sales agreement and the letter of transmittal accompanying the sales agreement can be considered to be a compliance with Conn. Gen. Stat. sec. 20-325a.
Conn. Gen. Stat. sec. 20-325a recites
 (b) No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent.
"The writing required by see. 20-325a pertains only to the listing contract and not to the sales contract." William Pitt, Inc. v. Taylor, 186 Conn. 82, 84 (1982).
A listing agreement between a broker and the owner of real estate is basically an employment contract, and is separate and apart from a sales contract between a buyer and a rate and apart from a sales contract between a buyer and a seller. Id.
The sales contract and the transmittal letter evidence CT Page 3225 an agreement to pay a real estate commission but do not form an employment contract between the plaintiff and the defendants. These two documents merely show a "done deal" not a contract for future performance by a broker as contemplated by Conn. Gen. Stat. sec. 20-325a. Id. Seaman v. King Arthur Court, Inc., 35 Conn. Sup. 220, 223 (1979).
As to the first count, the plaintiff has failed to establish probable cause to support his pre-judgment remedy application.
On the second count, which is a suit on a note, the issue is whether the lack of a listing agreement is fatal.
The term "note" means a negotiable instrument. Conn. Gen. Stat. sec. 42a-3-104. However, for a note to be a negotiable instrument, one of the requirements is that it be made "payable to the order or assigns of any person therein specified . . . ." Conn. Gen. sec. 42a-3-110.
The so-called "Note", referred to in plaintiff's application, is devoid of any language which runs to the order or assigns of the plaintiff.
Although the so-called note is not a negotiable instrument as between the original parties, it remains a simple contract for the payment of money. Appliances, Inc. v. Yost,181 Conn. 207, 210-211 (1980).
The contract, in this action for the payment of money, arises out of the plaintiff's performance as a broker for the sale of real estate owned by the defendants. Unless a listing agreement has been executed in conformance with Conn. Gen. Stat. sec. 20-325a, no action claiming the enforcement of that contract may be maintained. Frances T. Zappone Co. v. Mark,197 Conn. 264, 266; Seaman v. King Arthur Court, Inc., supra 222-23.
Since no listing agreement existed prior to the execution of the sales agreement, we cannot find probable cause to maintain this action under the second count.
In regard to the third count based upon a CUTPA claim, the plaintiff claims that the defendants "willfully, wantonly and maliciously violated the provisions of the Connecticut Unfair Trade Practices Act, Connecticut General Statutes sec. 42-110b.
 The CUTPA statute provides: "No person shall engage in unfair methods of competition CT Page 3226 and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes sec. 42-110b (a). The statute also provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." General Statutes sec. 42-110g(a). In a private dispute a plaintiff may recover for CUTPA violations only if the proven deceptive acts or practices of the defendant "have a potential effect on the general consuming public." Ivey, Barnum O'Mara v. Indian Harbor Properties, Inc., 190 Conn. 528, 540, 461 A.2d 1369 (1983).
Sportsmen's Boating Corporation v. Hensley, 192 Conn. 747, 755
(1984).
 In determining whether a practice violates CUTPA, the court should employ these criteria: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].' Conaway v. Prestia, [191 Conn. 484, 490-91 464 A.2d 847 (1983)], quoting FTC v. Sperry Hutchinson Co., 405 U.S. 233, 244 n. 8, 92 S.Ct. 898 31 L.Ed.2d 170 (1972)." McLaughlin Ford, Inc. v. Ford Motor Co 192 Conn. 558, 568 473 A.2d 1185 (1984). Id. at p. 756.
In examining the allegations in plaintiff's third count, no claim has been made which fits into any of the above three criteria recited in the Sportsmen's Boating Corporation case, supra.
Basically, the plaintiff's case is a claim for a real estate commission unenforceable because of his failure to comply CT Page 3227 with Conn. Gen. Stat. sec. 20-325a. This situation does not appear to have an effect on the general consuming public. The CUTPA claim arises out of and appears to be a consequence of the unenforceable claim for a real estate commission. Under these circumstances, we find no probable cause to sustain the action under the third count.
Paragraph 10 of the sales agreement provides as follows:
 10. BROKER. Buyer and Seller represent, covenant and warrant to each other that (i) no negotiations in connection herewith were made with or through any person or entity other than George Pelletier, Alan Weidt and E. J. Marshall Corporation (collectively, the "Broker") acting as brokers and (ii) Buyer and Seller know of no broker other than the Broker who was instrumental in the consummation of this transaction and (iii) Buyer and Seller have not made any commitment with or to any broker other than the Broker with respect thereto. Buyer hereby indemnifies and agrees to hold Seller harmless from and against all obligations for the payment of any and all brokerage commission, commissions or other compensation which may become due and payable or any expense (including reasonable attorneys' fees) which may be sustained in defending against any claims which may be made by anyone predicated on the falsity of the said warranty and representation. Buyer represents to Seller that Buyer will pay a brokerage commission in the amount of One Hundred Thousand and 00/100 Dollars ($100,000.00) to Alan Weidt and George Pelletier and One Hundred Thousand and 00/100 Dollars ($100,000.00) to E. J. Marshall Corporation in connection with the consummation of the within described sale and Buyer assumes responsibility for the commission payable to the Broker. The provisions of this Section shall survive the Closing.
The plaintiff, Alan Weidt, was to receive $50,000.00 in cash at the time of the closing. Because the defendants did not have the cash at the time of the closing to pay the plaintiff, the defendants prevailed upon the plaintiff to forego CT Page 3228 payment in cash, and instead, accept a promise of the defendants to pay the $50,000.00 commission within a six month period of time. The defendants now claim that no commission is due because of the defense provided for in Conn. Gen. Stat. sec.20-325a.
In this case, the plaintiff broker has been led by the defendants into believing his commission would be paid if he accepted this representation of payment. In short, the defendants want the benefit of the plaintiff's efforts in putting the sale of their property together with a buyer, and not the burden of paying the commission.
In one instance, Conn. Gen. Stat. sec. 20-325a has been likened to the Statute of Frauds (Conn. Gen. Stat. sec.52-550), wherein in section (b) a written memorandum need not consist of a single document. DelGreco Realty Co. v. Lamoureux,39 Conn. Sup. 95,95, 97 (1983).
In First Connecticut Small Business Investment Co. v. Arba, Inc., 170 Conn. 168, at 174-175 (1976), the court stated the concept that the doctrine of estoppel could be applied in circumstances of fraud. "When the Statute of Frauds is pleaded (as a defense) the doctrine may be applied to prevent the use of that statute to accomplish a fraud." Id. citing Wolfe v. Wallingford Bank Trust Co., 124 Conn. 507, 515 (1938).
Similarly, in this situation the statute (Conn. Gen. Stat. sec. 20-325a) is pleaded to accomplish a fraud.
"`There are two essential elements to an estoppel — the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done.'" (Citations omitted). First Connecticut Small Business Investment Co. v. Arba, Inc., supra at 175.
In the present case the defendants induced the plaintiff from insisting on cash at the closing of the property by leading him to believe that he would be paid within six months time. The plaintiff, relying upon the representations of the defendants, in foregoing the payment of cash, permitted the defendants to later raise the defense under Conn. Gen. Stat. sec.20-325a.
"[E]stoppel `must be made available to thwart real injustice against the plaintiff by the attempt of (the defendants) to use the statute as an engine of fraud.'" First CT Page 3229 Connecticut Small Business Investment Co. v. Arba, Inc., supra p. 174.
Although we have found no probable cause in counts one, two, and three of the plaintiff's complaint based upon the defense raised in Conn. Gen. Stat. sec. 20-325a, the equitable doctrine of estoppel may be raised by the plaintiff to prevent the defendants from using this statute as an engine of fraud. Id.
Accordingly, we find probable cause to sustain this action. The application by the plaintiff for a pre-judgment remedy is granted to attach the real property of the defendants known as 1021 Asylum Avenue, Hartford, Connecticut, 31 Gillett Street, Hartford, Connecticut, and 948-950 Asylum Avenue, Hartford, Connecticut for the sum of $60,000.00.
ARNOLD W. ARONSON, JUDGE JUDGE, SUPERIOR COURT