[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
This is a foreclosure action. The plaintiff's (CBT) complaint is in three counts. The first and second counts of its second revised complaint allege with respect to defendants Bershtein and Brand that the obligation underlying the construction mortgage is in default and that the CBT construction mortgage and security agreement has priority over the Bershtein/Brand purchase money mortgage. In the third count CBT claims a judgment against the defendant Stern as a guarantor on the underlying obligation. Defendants Bershtein and Brand have each filed answers denying that the CBT mortgage has priority and special defenses which put into issue the priorities of the respective mortgages. Also the defendants Bershtein and Brand have alleged counterclaims against CBT in substantially similar terms as the special defense in which they claim priority over the CBT construction mortgage for the purchase money mortgage. None of the other defendants have offered a defense and all defendants except for Bershtein and Brand have been defaulted.
The plaintiff has moved pursuant to Practice Book section 378, et seq., for a summary judgment in the above-entitled matter with respect to (1) CBT's complaint against the defendants Trolley Barn Corporation, Michael Stern a/k/a Michael K. Stern, Town of Groton, Raymond Bershtein, Trustee (hereinafter "Bershtein"), Andrew J. Brand, Trustee CT Page 520 (hereinafter "Brand"), Breetz Thorne, P.C., Donald O. Hammerberg, Jr. d/b/a Don Hammerberg Associates, and Walter McIveen d/b/a Walter McIveen Associates; and (2) the counterclaims of Bershtein and Brand claiming that there is no genuine issue of law as to any material fact in CBT's complaint or in the said counterclaims and that CBT is entitled to judgment on both as a matter of law.
On November 21, 1990, Brand submitted a memorandum in opposition to CBT's motion for summary judgment; and on November 26, Bershtein submitted a memorandum in opposition to CBT's motion for summary judgment. On November 26, 1990, CBT, Brand and Bershtein presented their respective arguments before this Court through counsel with respect to the said motion.
On December 12, 1990, plaintiff filed an additional memorandum in response to the defendant's briefs.
The defendants Bershtein and Brand have not moved for summary judgment on their counterclaim.
The facts relating to the motion are as follows.
On October 18, 1985, to secure an $800,000.00 promissory note for the payment of a portion of the purchase price for the property, Michael Stern mortgaged to Mystic Marine Railway, Inc. the real property sought to be foreclosed in this action (hereinafter "the property"). That purchase money mortgage was subsequently assigned to Brand and Bershtein for reasons not here relevant, along with the promissory note which it secured. That mortgage provided for a partial release schedule in paragraph 20 by which the purchase money mortgagee would provide to the mortgagor partial releases upon payment of $30,000.00 for each condominium unit to be released. At that time the plans of Michael Stern for the development of the property provided for the construction of twenty-four condominium units and a marina facility. It is noted that $30,000.00 per unit for twenty-four condominium units would produce $720,000.00. Defendant Stern discussed the development plan to construct twenty-four units with the predecessor of Brand and Bershtein at the time of the purchase money mortgage according to the affidavit of George Stout dated November 26, 1990.
About three months later, on January 16, 1986, Michael Stern obtained from CBT a commitment letter for a construction loan of $4.6 million referring to the condominium project and giving consideration to the partial releases for the sale of units after the payment of $30,000.00 per unit to CT Page 521 reduce the purchase money mortgage. The commitment letter also required a phasing of payments (paragraph 27) and a retainage (paragraph 25). The commitment letter also called for a "valid first lien". That letter provided that the terms and conditions contained therein "shall survive the closing of the loan and are to remain in full force until the payment in full of the principal balance of the loan plus all accumulated interest and other associated costs". The letter was signed as having been accepted by Michael Stern.
Thereafter, the property was transferred to Trolley Barn Corporation, a Connecticut corporation in which Michael Stern was president, treasurer and sole stockholder. Trolley Barn Corporation granted a mortgage to CBT to secure a note in the amount of $4.6 million, purporting to convey a mortgage in the property. The mortgage contemplated the construction of the condominium units in accordance with the plan for twenty-four units plus a marina, including the filing of a condominium declaration. Paragraph 25 of the mortgage to CBT (hereinafter "construction mortgage") provided for partial releases, and that provision specifically also provided for the payment of $30,000.00 per unit to the reduction of the Brand and Bershtein purchase money mortgage of $800,000.00.
At the time of the construction mortgage CBT obtained from Stern and the Trolley Barn Corporation a "Satisfaction of Subordination" signed by Brand and Bershtein apparently intending to relate to the satisfaction of the subordination requirements set forth in paragraph 21 of the purchase money mortgage "as it may apply to a certain mortgage dated. . . in the amount of $4,600,000.00 from Michael Stern and/or Trolley Barn Corporation to Connecticut Bank and Trust Company, N.A., which mortgage is to be recorded immediately following the recordation of this satisfaction of subordination." Prior to the signing of the Satisfaction of Subordination Agreement, Brand and Bershtein received from Stern's attorney an appraisal of the property by F. Jerome Silverstein indicating a value of $7,600,000.00 based on a price list showing sales of twenty-four condominium units, for a total sales price of $7,953,300.00. The defendants Brand and Bershtein and their principal, George Stout, all relied upon that appraisal and the twenty-four unit development plan in connection with the execution of the Satisfaction of Subordination document on November 12, 1986.
Thereafter, CBT received engineering reports and photographs which were used in some way in connection with their disbursement of funds to Trolley Barn. At some point thereafter, without notice to George Stout, Mystic Marine Railway, Inc., Brand or Bershtein, CBT commenced to CT Page 522 "reallocate" the funds from the construction mortgage so that instead of constructing twenty-four condominium units and a marina with the $4.6 million, there would be only fifteen units constructed. This "reallocation" was discussed by CBT with the defendant Stern and his employee. The decision was made according to CBT to "enhance the profitability of the project".
No condominium documentation has been filed on the land records relating to the property.
No certificate of occupancy has been issued for any single condominium unit permitting the sale of the same.
No condominium unit from this project has been sold.
The entire $4.6 million has been disbursed by CBT.
The record does not reflect the stage of completion of the fifteen units to which the funds were "reallocated". The construction mortgage is in default and the defendant Stern has disclosed no defense.
The law with regard to summary judgment can be clearly stated. Where the pleadings, affidavits and other proof submitted by the parties establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, the motion for summary judgment should be granted. Connecticut Practice Book section 384; Nolan v. Borkowski, 206 Conn. 495, 500
(1988). To create an issue of material fact, it is not sufficient that a party state legal conclusions or to state simply that a material issue of fact does exist. United Oil Company, Inc. v. Urban Redevelopment Company, 158 Conn. 364
(1969). That case makes it clear that some evidence is required in the counteraffidavits which show the existence of such material facts either directly or in such a way that they may be "warrantably" inferred.
Summary judgment is generally not appropriate where questions of motive, intent or subjective feelings are involved. Batick v. Seymour, 186 Conn. 632 (1982).
The only issue presented by the motion and the respective affidavits and briefs of the parties is with regard to the priority as between the CBT construction mortgage of $4.6 million and the Bershtein/Brand purchase money mortgage of $800,000.00. Under the circumstances of this case, that determination must be made from the very unusual contract provisions involved in this transaction. CT Page 523
CBT has argued that a judgment of foreclosure must be given in this case since no defense to the same has been provided by any party. The question is not whether or not there will be a foreclosure; the question is whether the construction mortgage or the prior purchase money mortgage will be given priority with regard to the same.
The law relating to the priority of interests has its roots in early Connecticut jurisprudence. A mortgage which is recorded first is ordinarily entitled to priority so long as every grantee is provided a reasonable time to get his deed recorded. Beers v. Hawley, 2 Conn. 467 (1818). See, St. Andrews v. Lockwood, 2 Root 239 (1795); 1 Swift's Digest 125 (1822).
Section 47-10 of the Connecticut General Statutes requires that all interests in land be recorded on the land records of the town in which the land lies. A mortgage is a conveyance within the contemplation of that statute. Second National Bank v. Dyer, 121 Conn. 263 (1936).
It is the land records ". . . upon which Connecticut's property rights are based. It is elementary that nothing should be allowed to weaken the effectiveness of that system of records. . . To act otherwise would invite chaos . . ." Wilson v. DeGenaro, 36 Conn. Sup. 200, 207 (1979).
However, "because a mortgage foreclosure action is an equitable proceeding, the trial court may consider all relevant circumstances to insure that complete justice is done . . . Although equitable power must be exercised equitably . . . the determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court . . ." Reynolds v. Ramos, 188 Conn. 316,320 (1982).
"Equity always looks to the substance of a transaction and not to mere form." Connecticut National Bank v. Chapman, 153 Conn. 393, 397 (1966) (where the court reestablished the priority of a first mortgage which was released by mistake). "In an equitable action the court endeavors to do complete justice . . ." McGaffin v. Roberts,193 Conn. 393, 404 (1984).
There is a presumption in the law that one taking a mortgage upon land knows of all prior encumbrances of record affecting it. Homeowners Loan Corporation v. Sears, Roebuck Company, 123 Conn. 232, 240 (1937). CT Page 524
Equity will not intervene to benefit one who is the victim of his own negligence, where to do so would work an inequity on another. See, Homeowners Loan Corporation v. Sears, Roebuck Company, 123 Conn. 232, 243 (1937).
Under these ordinary rules, therefore, the purchase money mortgage which was first in time would be given priority, unless there is a valid claim to the contrary established by the parties. In this case CBT claims that there is what amounts to an "automatic" subordination contained in the original purchase money mortgage. That mortgage did contain the following provision:
 21. Subordination. Grantor shall have the right to subject the fee in the premises or any part or parts hereof including all rights and easements appurtenant thereto and all buildings and other improvements thereon at any time and from time to time to any one or more bona fide institutional first mortgages (subject to the restrictions hereinafter stated in this paragraph) to finance the initial purchase of the premises, and/or to finance the construction or renovation of buildings and improvements thereon, or to place permanent financing on the premises, and to renew, modify, consolidate, replace, extend and/or refinance any one or more of such permitted mortgages which financing shall be utilized for any one or more of the following: Construction, architectural, legal, accounting, trade expenses, expenses commonly known as hard and soft costs, demolition, site improvement, repair, replacement or any other work pertaining to the premises and also for the refinancing of any mortgages on the premises.
 The lien of this mortgage shall automatically be subordinated to the lien of any one or more of such mortgages executed by the Grantor, provided that Grantor shall provide Grantee with an appraisal from an appraiser chosen by grantor and approved by grantee stating that the total principal amounts of such prior mortgages plus the outstanding CT Page 525 principal amount of this mortgage do not exceed 80 percent of the appraised value of such premises contemplated to be constructed from the proceeds of any such construction mortgage upon said premises.
In addition to the subordination paragraph cited above from the original document, Brand and Bershtein at a time prior to the construction mortgage signed a "Satisfaction of Subordination" in the following terms:
 Andrew Brand, Trusteer and Raymond C. Bershtein, Trustee, grant to Michael Stern and Trolley Barn Corporation a satisfaction of the subordination requirements as set forth in paragraph 21 "Subordination" of a rider to a certain mortgage deed dated October 18, 1985 from Michael Stern, Grantor, to Mystic Marine Railway, Inc., Grantee, recorded in Vol. 411, page 498 of the Groton Land Records (which mortgage deed was assigned to Edgar W. Bassick III, Trustee, and (sic) Andrew Brand, Trustee, by assignment dated October 30, 1985 recorded November 4, 1985 in Vol. 412, page 347 of the Groton Land Records which was further assigned by Edgar W. Bassick III, Trustee, to Raymond C. Bershtein, Trustee, by assignment dated November 19, 1990 as it may apply to a certain mortgage dated in the amount of FOUR MILLION SIX HUNDRED THOUSAND DOLLARS ($4,600,000.00) from Michael Stern and/or Trolley Barn Corporation to the Connecticut Bank and Trust Company, N.A. which mortgage is to be recorded immediately following the recordation of (sic) this Satisfaction of Subordination.
Another important and distinguishing aspect of this case is that the CBT construction mortgage contains the following provision:
 25. Partial Release. Upon the request of the Grantor and provided that the Grantor is not in default under the terms of this mortgage or the note secured hereby or any other additional collateral which secures the note, the Grantee agrees CT Page 526 to release from the lien an operation of this mortgage any unit, together with percentage of undivided interest of such unit in the common areas and facilities, upon the occurrence of all of the following terms and conditions:
 (a) Upon payment of 100 percent (100%) of net proceeds of sale for each unit less THIRTY THOUSAND DOLLARS ($30,000) per unit (which proceeds will be used to reduce a certain $800,000 purchase money mortgage). The net proceeds from the sale of units is the gross selling price as indicated on the sales list attached as Exhibit C, less real estate commission not to exceed 6 percent (6%) and other routine and ordinary pro-rations and expenses which shall be supported by a signed closing statement, provided that notwithstanding the THIRTY THOUSAND DOLLAR ($30,000) per unit provision above mentioned in no event shall individual release amounts be less than 90 percent (90%) of the selling price per unit as set forth on Exhibit C; and . . .
Also, Exhibit C attached to the construction mortgage and recorded in Volume 432, p. 746 of the Groton Land Records set forth a listing of twenty-four units with sales prices ranging from a low of $250,000.00 to a high of $389,300.00 per unit and specifically referring to the units by their planned location.
Also, the construction mortgage of CBT contains a provision (paragraph 23) dealing with the construction of the units which says, "Grantor shall immediately proceed with the construction of buildings or improvements and the appurtenances thereto on the premises according to plans and specifications or other construction requirements approved by the Grantee and the Grantor shall not substantially cease construction for a period of fourteen (14) consecutive days . . ." and providing further that CBT would have an option to accelerate the loan if "the Grantor shall materially deviate from the plans and specifications or other construction requirements . . ."
The documentation provided by the parties in connection with the affidavits, depositions and counter-affidavits makes it clear to the Court that the defendants CT Page 527 Bershtein and Brand and/or their predecessor had been made aware of the plans of Stern and Trolley Barn to construct twenty-four condominium units plus a marina on the property at various times during this transaction, including:
(1) At the time of the original sale and purchase money mortgage, and
(2) At the time of the signing of the Satisfaction of Subordination.
It is particularly clear that prior to the signing of the Satisfaction of Subordination the parties were shown an appraisal by Mr. Silverstein which itself relied upon the construction of twenty-four condominium units for the value obtained. CBT in its argument, particularly in the December 12, 1990 plaintiff's memorandum in response to the briefs of the defendants, appeared to place great reliance upon the fact that no oral communication of a "representation" has been claimed by any party from a CBT representative. Whatever might be said about the "oral" representations which may or may not have been made (and there is no evidence of oral representations in the documentation provided for this motion) the existence of the above written documentation is not in dispute.
The plaintiff's motion for summary judgment against all parties except Bershtein and Brand is granted. With respect to the defendants Bershtein and Brand, the motion is granted with regard to the first, third and fourth counts of their counterclaim since no evidence was offered with their documentation with regard to the same. Also, with respect to the defendants Bershtein and Brand, the motion for summary judgment both with regard to the first and second counts of the complaint and with regard to the second count of the counterclaims is denied for two separate and independently supported reasons.
First, the Court finds, notwithstanding the extensive documentation provided by CBT with its motion for summary judgment, that there is a genuine issue as to a material fact relating to the first and second count of the complaint and in the second count of the counterclaim. The Court finds from documentation provided by the defendants Bershtein and Brand that there is a genuine issue as to the intention of the parties relating to the interpretation of the documentation referred to above by which the alleged subordination was claimed to have been made. In that connection it is interesting to note that the CBT brief at page 54 submitted with the motion for summary judgment does CT Page 528 suggest that "to the extent that there is any ambiguity in the language of the subordination clause, the ambiguity should not be construed in such a way as to benefit the present holders of the purchase money mortgage." While CBT has not acknowledged that there is ambiguity, they at the same time claimed the benefit of rules providing that ambiguous terms should be construed against their drafters. In Connecticut the law is that where there is ambiguity in the terms of a contract, it has to be interpreted in light of the surrounding circumstances and the intent of the parties. Hanson Development Company v. East Great Plains Shopping Center, Inc., 195 Conn. 60, 65 (1985). The determination of the intention of the parties is an inference of fact. Id. In that situation where there is such an ambiguity, the summary judgment is peculiarly inappropriate. It is clear to the Court that there is an honest and legitimate issue as to the meaning of the various documents which form a part of the circumstances of this case which will call into play the intent of the parties at the time of the signing of the various documentation and the acceptance of the various mortgage provisions. Batick v. Seymour, 186 Conn. 632 (1982). Under one reasonable interpretation claimed, the plaintiff would not have priority over the prior mortgage and the defendants could prove their "implied covenants" theory of the second count of their counterclaims.
Secondly, the plaintiff as to those counts is not entitled to judgment as a matter of law. This is not a case where the issues are disposed of under the general theory that the construction mortgagee owes no duty to the subordinated purchase money mortgagee. Whatever might be said with regard to the general rule in the country (See, Korngold, 50 Fordham Law Review, 313, Dec. 1981, Construction Loan Advances) which was adopted in Connecticut in First Connecticut Small Business Investment Company v. Arba, Inc., 170 Conn. 168 (1976), CBT has not brought to the attention of this Court, nor has the Court found a case which fairly compares with the circumstances existing here. The First Connecticut Small Business Investment Company case to which the plaintiff refers involved an unconditional automatic subordination agreement. Clearly, it could not be said by a fair reading of the subordination terms of paragraph 21 of the purchase money mortgage that it was "unconditional". In fact, the paragraph contains both the word "restriction" and the words "provided that" as limitations on the grant of any claimed "automatic subordination". In the fourth line of the paragraph in the middle of the subordination provision, it says, "(subject to the restriction hereinafter stated in this paragraph)" in the second paragraph of the provision which contains the automatic language, it specifically says that the subordination will be CT Page 529 automatic "provided that the Grantor shall provide the Grantee with an appraisal from an appraiser chosen by Grantor and approved by Grantee stating that the total principal amounts . . . do not exceed 80 percent of the appraised value of the premises contemplated to be constructed from the proceeds of any such construction mortgage. . ." In addition, the language of that provision requires that the funds advanced under any "bona fide institutional first mortgages" should be specifically used for specific purposes which are itemized in that paragraph including "construction, architectural, legal, accounting . . . or any other work pertaining to the premises. . ."
Moreover, CBT incorporated these provisions by reference into the construction mortgage in paragraph 25 indicating both that it will be charged with knowledge of the contents of the purchase money mortgage subordination terms and that the same was related to a certain plan for construction on the premises.
It had to be perfectly clear to the CBT officials who authorized the "reallocation" of the funds to the construction of only fifteen units that the purchase money mortgage holder to whom it undertook an obligation by the acceptance of its mortgage would be adversely affected.
It is therefore the conclusion of the Court that the general rule set forth in First Connecticut Small Business Investment Company v. Arba, Inc., 170 Conn. 168 (1976) is not applicable because of the conditional nature of the subordination and the CBT's incorporating of the terms of the purchase money mortgage payoff by reference in its subsequent mortgage.
Moreover, there are two requirements of that subordination provision which have not been met by the circumstances of this case as outlined in the documentation attached to the motion:
(1) There does not now exist the 80 percent of value situation contemplated by the subordination; and
(2) CBT's "reallocation" in effect constituted a substantial change of the construction originally contemplated and required by the subordination provision.
Completely separate from the above discussion there is another reason the plaintiff is not entitled to judgment as a matter of law which were referred to by Judge Walsh in his helpful if gratuitous memorandum of June 15, 1990. The subordination agreement referred to runs from Mystic Marine CT Page 530 Railway, Inc. to Michael Stern and not for the benefit of CBT. Moreover, the Satisfaction of Subordination dated November 12, 1986, where Brand and Bershtein referred specifically to the Connecticut Bank and Trust Company $4.6 million mortgage does not suggest that the conditions of the mortgage subordination terms were in fact satisfied but simply says that the defendants' "grant to Michael Stern and Trolley Barn Corporation a satisfaction of the subordination requirements. . ." as it may apply to a certain mortgage . . . in the amount of FOUR MILLION SIX HUNDRED THOUSAND DOLLARS . . . to the Connecticut Bank and Trust Company . . ." whatever that language may mean. It is clear from the surrounding circumstances shown by the documentation provided with this motion that at the time of the signing of this agreement the parties were aware of the plan for twenty-four units to be built with the $4.6 million and relied upon that plan for the provision of the "satisfaction".
These rulings as to Bershtein and Brand are interlocutory only as to the issue of priority pursuant to section 385 of the Practice Book and therefore the case may proceed on the other issues as provided by law.
Leuba, J.